## Smith and Wife *versus* Warden and Alexander.

1. Real estate was sold under a judgment against the administrator alone, the heirs not being made parties to the proceeding as required by the Act of 1834. Subsequently, one of the five heirs executed an instrument of writing referring to the sale, and, in consideration of the receipt of one fifth part of the net proceeds of it, releasing the purchasers from the same, and assigning, conveying, and confirming to them, their heirs and assigns, for ever, the said property and all her right and interest therein.

It was *held*, that, there being no evidence tending to affect the sheriff's vendees with *fraud* in procuring the sale or in obtaining the instrument of transfer, and no evidence to repel the presumption that the heir was acquainted with the rule of law which rendered the sale inoperative as to her title as she was not a party to the proceeding, her receipt of her share of the purchase-money was an affirmation that her title had passed to the purchasers, and she was *estopped* from proving the contrary, to the injury of those who purchased on the faith of her act.

2. The heir in question had no right to any part of the purchase-money

arising from the sale, unless her title passed to the purchaser; and she will not be permitted to retain the money and also to recover the land.

3. Equitable estoppels have place as well where the proceeds received arise from a sale *by authority of law* as where they spring from the act of the party, and the application of the principle does not depend on any supposed distinction *between a void and a voidable sale.*

4. The instrument conveying the interest of the heir had the elements of a deed of bargain and sale.

ERROR to the District Court of *Allegheny county*.

This was an ejectment, brought to Nov. Term, 1850, by Daniel Smith and Elizabeth his wife, late Elizabeth Elliott, *v.* John B. Warden and John Alexander, for the undivided fifth part of a tract of land in St. Clair township, Allegheny county, part of a tract of land known as "Elliott's Delight," and on which the village of Temperanceville is located. The material question was, whether an instrument of writing, executed by Elizabeth, one of the plaintiffs, confirmed a sheriff's sale of the premises, so far as respected her interest; or whether she was estopped from maintaining this suit.

On the 29th of July, 1828, West Elliott, the father of the plaintiffs below, died, seised of the land in controversy. David Frew became the administrator of his estate, and on the 13th December, 1834, judgment was obtained against him for the sum of one hundred dollars. On this judgment a *fi. fa.* was taken out, and the tract, part of which is in controversy, was levied upon and condemned, and was afterwards sold under a *vend. exponas*, issued to November Term, A. D. 1835, to John Alexander, John B. Warden, and James Craft (the latter of whom subsequently conveyed his interest to Alexander and Warden). The heirs of Elliott were not made parties to the suit or judgment. On the 31st of May, 1836, Elizabeth Elliott, being at that time of full age (upwards of twenty-five years old), by an instrument under seal, for the consideration therein mentioned, released Warden, Alexander, and Craft from the fifth of the net proceeds of sale, and assigned and conveyed to them, their heirs and assigns, all her right or claim therein.

The defendants entered into possession of the property immediately after the sheriff's sale, and continued to occupy and improve it up to the time of the bringing of this action; made sales of lots, on which a considerable number of valuable buildings have been erected, and on which a large amount of money has been expended. On the ground in dispute, churches have been built, and manufacturing establishments have been put in operation, and a village been erected. Mrs. Smith (Elizabeth Elliott) resided for the greater portion of time from the sheriff's sale to the bringing of the action, in and about Temperanceville. On her part it was alleged that the instrument executed by her in 1836, was void in law, and not effectual to convey her estate.

[Smith *v.* Warden.]

It was decided in the case of Warden and Alexander *v.* Eich-baum, 2 *Harris* 121, that the sale made under the said judgment conveyed no title, on the ground that, although the action against the administrator of the estate of West Elliott, dec'd., had been commenced before the Act of the 24th of February, 1834, relating to executors and administrators, took effect, viz. 1st Oct. 1834, yet, as the *judgment* was not entered until after that day, the heirs of West Elliott were entitled to be made parties to the action, if the plaintiffs intended to charge the real estate of the decedent. But the defendants defended under transfer made by Mrs. Smith, of the 21st of May, 1836; and the fact that, independent of the transfer, she had, by receiving her share of the purchase-money, created *an estoppel in pais*, which precluded her from setting up the irregularity of the sale of the property under the judgment.

Before trial, the description of the land claimed was amended so as to exclude the lots in Temperanceville which had been sold, or contracted to be sold by the defendants.

The suit under which the property referred to was sold, was an action by Snowden and wife *v.* David Frew, as adm'r., &c., of West Elliott, deceased. Writ issued 24th Dec. 1833. Dec. 13, 1834, judgment for $100. *Fi. fa.* to July Term, 1835. Levied on West Elliott's interest in a tract of 96 acres, part of "Elliott's Delight," and the mill tract. Condemned.

*Vend. exp.* to Nov. T. 1835. Sold to John Alexander, John B. Warden, and James S. Craft. Sheriff's deed, 2d December, 1835.

On the part of the defendants, was offered in evidence the instrument of writing executed by Elizabeth Elliott, as follows:

"Whereas, by a writ of *vend. ex.*, issued out of the District Court of Allegheny county, at the suit of Jno. M. Snowden, Sr., *et al.*, against West Elliott's adm'rs., said writ being numbered fifteen of those returnable to November Term, 1835, of said Court, there was exposed to public sale by the high sheriff of said county, on the 23d day of November, A. D. 1835, all the right, title, interest of the said West Elliott, in the hands of his administrators, of, in, and to a tract of land in St. Clair township, which Ezekiel Harker and his wife, by deed of the 11th of September, 1822, recorded in Book D. 2, page 360, conveyed to the said West Elliott, subject to a yearly ground-rent of $150, payable to said E. Harker, and on which is erected a merchant mill, saw mill, and other buildings, being part of a larger tract called Elliott's Delight, containing ninety-six acres, three quarters and thirteen perches, and the said property was sold to Jno. B. Warden, John Alexander, and James S. Craft, for the sum of five thousand dollars.

"Now, therefore, I Elizabeth Elliott, daughter and heir of the

[Smith *v.* Warden.]

said West Elliott, and as such *entitled to one fifth part* or share of the proceeds of the sale of said property (deducting the amount appropriated to the debts of said father against said property, for and in consideration of the receipt of the said fifth share of the said proceeds (deducting the said share of debts), amounting to nine hundred dollars and upwards, *from the said Warden, Alexander, and Craft,* do hereby remise and release the said Warden, Alexander, and Craft of and from the one fifth part or share of the purchase-money of said property, and do assign, transfer, convey, and confirm unto them, their heirs and assigns, for ever, the said property, and all my right, interest, share, and claim therein, and authorize them to acquit and release the sheriff of Allegheny county aforesaid, Elijah Trovillo, Esq., from all liability or accountability whatsoever to me, for any part of the proceeds of said sale.

"In witness, &c., this 31st May, 1836.

    ELIZABETH ELLIOTT [L. S.]"
Witnesses—JOHN M. SNOWDEN, SR.
        JOHN FINNEY, SR.

It was acknowledged 31st May, 1836, and recorded on 21st Feb. 1839.   Deed of Craft and wife to Alexander and Warden, 29th April, 1837.

Ross, referred to in the charge, was the guardian of Elizabeth Elliott.

HEPBURN, J., in his charge as to the principle, as respects ignorance of the law, referred to the case of Good *v.* Herr, 7 *W. & Ser.* 256; also 1 *Story's Eq.* sec. 272, 139–150.

He further observed, that this principle extends only to cases where the parties have acted in entire good faith, and have taken no undue advantage, or been guilty of any misrepresentation, &c., in obtaining the release in question.   He also observed:

"I have already said that there was no evidence of fraudulent combination between Ross and the defendants in obtaining the sheriff's sale, at which the defendants were the purchasers, and that Ross's acts, whatever they were, are not chargeable on the defendants.   The release or deed in question, as a mere legal instrument, is valid, and will be sufficient at law to pass the plaintiff's estate in the property in dispute ʼo the defendants.   But in equity, if it was obtained by fraud, misrepresentation, mistake of fact, or undue influence, or by imposition on a person of weak mind, or upon great inadequacy of price, the deed should be set aside, and whether any of these things exist is a question of fact for the jury to determine.

"There is some evidence of inadequacy of price, though if we add the principal of the ground-rent charged upon the land and pay-

able to Harker, viz. $2500, to the purchase-money, $5000, it makes the whole purchase-money $7500, a sum which it seems to me, according to the weight of the evidence, was probably the full value of the property at the time it was sold. Then, was there any undue influence, or misrepresentation, or mistake of fact, or fraud of any kind, in obtaining the release in question? I have looked into the evidence in vain, to discover anything of the kind; but the facts are for you. If any of them are found to exist, your verdict should be in favor of the plaintiff; but unless there is satisfactory evidence of fraud, undue influence, imposition, or mistake of fact, your verdict should be in favor of the defendants.

" The plaintiff's points were presented to me too late to read them, and I am not able to answer them in detail. So far as they are inconsistent with this charge I answer them in the negative, and direct you that there is nothing in them which will justify a verdict in favor of the plaintiffs, unless there was fraud, misrepresentation, undue influence, &c., in obtaining the release by the defendants."

Error was assigned to the charge, and to the neglect to answer points, &c.

*Dunlop*, for plaintiffs in error.—He contended, *inter alia*, that the instrument executed by Elizabeth was not sufficient to convey her estate. He contended that the consideration expressed was her own money, and the use enured to herself: 14 *Ser. & R.* 193; 3 *Rawle* 34; 5 *Watts* 30.

*Woods* and *Shaler* were for defendants in error.—It was contended that though the title was defective, it was not void but voidable, and might be confirmed: Adlum *v.* Yard, 1 *Rawle* 162; 2 *Barr* 479; 4 *Id.* 193; 5 *Id.* 168; 7 *Ser. & R.* 43; 2 *Pa. Rep.* 182; 1 *Jones* 399.

As to the instrument executed by Elizabeth Elliott, it was observed that, whether it was called a conveyance, or confirmation, or a deed of bargain and sale, was not necessary to be settled; that it recited a consideration, described the property, and that its words were effectual for the conveyance of her interest in the estate.

If the sale were *void*, the heirs were not entitled to the purchase-money. The receipt of her share of the purchase effected an equitable estoppel in favor of the purchaser: 4 *Barr* 193, and other cases before referred to.

The opinion of the Court was delivered by

LEWIS, J.—This is an ejectment brought to recover, in right of the plaintiff, Elizabeth, one of the heirs of West Elliott, deceased,

[Smith v. Warden.]

one undivided fifth part of a tract of land of which her ancestor died seised on the 29th July, 1828.

The defence is founded on a judgment against the administrator of West Elliott, deceased, rendered on the 13th December, 1834, in an action of debt brought on the 24th December, 1833; a levy and sale under the judgment; a sheriff's deed, acknowledged on the 2d December, 1835; and the payment of the surplus of the purchase-money to the heirs, of whom the plaintiff, Elizabeth, was one, after deducting the debts due by the decedent in his lifetime. The said Elizabeth, at the time of receiving security for the money, executed an instrument of writing acknowledging the receipt of the money, and, "in consideration" thereof, declaring that she does " assign, transfer, convey, and confirm" unto John B. Warden, John Alexander, and James S. Craft, the purchasers, "their heirs and assigns for ever, the said property, and all her right, interest, share, and claim therein." This instrument was executed on 31st May, 1836, at which time part of the money was paid, and the residue secured by bond, which was afterwards paid in instalments, the last of which was received by her on the 1st May, 1848.   On the 29th April, 1837, after this arrangement with the plaintiff was completed, James S. Craft and wife conveyed their interest in the premises to the defendants, J. B. Warden and John Alexander.   Since the purchase at sheriff's sale the town of Temperanceville has been built upon the land, and large expenditures for improvements have been made under the eye of the said Elizabeth.   One witness estimates these expenditures at the sum of $200,000.   But on the trial the plaintiffs amended their description so as to exclude the lots sold or contracted to be sold "to any other persons."

There is no evidence tending to affect the sheriff's vendees with fraud in procuring the sale, or in obtaining the instrument by which the said plaintiff transferred her interest to them and their heirs in fee.   She was perfectly acquainted with the *fact* that she had not been served with process to make her a party to the judgment on which the sale was made, and that she had not voluntarily made herself a party to that proceeding without process; and there is no evidence to repel the presumption that she was equally well acquainted with the rules of *law*, which entitled her to disregard a sale made under such a judgment as having no operation whatever upon her rights, unless she did some act which, on principles of equity and common honesty, might estop her from impeaching it.   As she was not a defendant in the execution she had no right, in that character, to receive any part of the money, after payment of the creditor's claim.   Her only title to the money depended upon the effect of the proceedings in divesting her estate in the land and converting it into money, by passing her title to the purchasers.   Upon this ground alone could she make any

claim to the money, in law or equity.   The receipt of her share
of the money was therefore an affirmation that her title had passed
to the purchasers by virtue of the sheriff's sale; and she cannot
be received to make a contrary allegation now, to the injury of
those who paid their money on the faith of the conveyance.   Where
a sale is made of land, no one can be permitted to receive both the
money and the land.   Even if the vendor possessed no title what-
ever at the time of the sale, the estoppel would operate upon a
title subsequently acquired.   It was held by this Court, at the late
sitting in Harrisburg, that "equitable estoppels of this character
apply to infants as well as adults, to insolvent trustees and guar-
dians as well as persons acting for themselves, and have place as
well where the proceeds arise from a sale *by authority of law*, as
where they spring from *the act of the party*:" Commonwealth *v.*
Shuman's Administrators, 6 *Harris* 346; McPherson *v.* Cunliff,
11 *Ser. & R.* 426; Wilson *v.* Bigger, 7 *W. & Ser.* 111; Stroble
*v.* Smith, 8 *Watts* 280; Benedict *v.* Montgomery, 7 *W. & Ser.*
238; Martin *v.* Ives, 17 *Ser. & R.* 364; Crowell *v.* McConkey,
5 *Barr* 168; Hamilton *v.* Hamilton, 4 *Barr* 193; Dean *v.* Con-
nelly, 6 *Barr* 239; Robinson *v.* Justice, 2 *Penn. Rep.* 19; Share
*v.* Anderson, 7 *Ser. & R.* 48; Furness *v.* Ewing, 2 *Barr* 479;
Wilkins *v.* Anderson, 1 *Jones* 399; Adlum *v.* Yard, 1 *Rawle* 163.
The application of this principle does not depend upon any sup-
posed distinction between a void and voidable sale.   The receipt
of the money, with the knowledge that the purchaser is paying it
upon an understanding that he is purchasing a good title, touches
the conscience, and therefore binds the right of the party in one
case as well as the other.

If this view of the case be correct, it is not material to the de-
cision that we should give a technical name to the instrument of
31st May, 1836.   It is clear, from the instrument, that one party
paid the consideration and the other transferred her title to the
land.   It has therefore the elements of a deed of bargain and sale.
It is said by Chancellor KENT that "nothing can be more liberal
than the rules of law, as to the words requisite to create a bargain
and sale.   There must be a valuable consideration, and then any
words that will raise a use will amount to a bargain and sale:" 4
*Kent* 496; 10 *John.* 456, 505.   We have already seen that the
consideration could not be demanded without a transfer of the
title.   The money received is therefore sufficient to support the
instrument as a deed of bargain and sale.

In this case forty-three points were presented to the Court be-
low, and thirty-eight errors have been assigned here; but, on a
careful examination of the whole proceedings, we perceive no error
in any part of the record.

                                        Judgment affirmed.