# Spragg *versus* Shriver.

A sheriff's sale of a defendant's real estate upon a judgment and execution against him, without a condemnation, or waiver of inquisition, in that particular case, and a deed acknowledged to the purchaser, without objection, and the proceeds of sale appropriated to the defendant's debts, will divest the title of the defendant to the premises, and a subsequent sheriff's sale of the premises as the property of the defendant will confer no title on the purchaser.

A defendant whose real estate is sold by the sheriff without a regular condemnation or waiver of inquisition, must object in a reasonable time, and such *reasonable time* is before the confirmation of the sale, and the acknowledgment of the sheriff's deed to the purchaser.

A defendant whose property is being sold at sheriff's sale, and who induces another person to purchase the same, cannot, after the payment of the money, the acknowledgment of the deed, and the appropriation of the proceeds to his debts, impeach the regularity of the proceedings under which it was sold, or the validity of the title of the purchaser.   His subsequent release to the purchaser, and delivery of possession, would equally estop him, and all claiming under him by title subsequent to such sheriff's sale.

ERROR to the Common Pleas of *Greene county*.

Isaac Shriver, the plaintiff below, brought ejectment to recover from Otho Spragg, and others, 450 acres of land.   The title to the premises in dispute, in 1842, was vested in John Shriver, against whom the plaintiff showed a judgment, entered in 1842—revived in 1844—and again in 1849; a levy and sale under that judgment to the plaintiff, and a sheriff's deed to him, acknowledged 18th December, 1851.

[Spragg *v.* Shriver.]

The defendant showed several judgments against John Shriver in 1841, 1842, and 1843—executions issued, inquisitions waived, but no sale made on any of those executions.  He then further showed a judgment in favour of John Luce against John Shriver and Henry Shriver, entered to No. 40, June Term, 1842, for $1200 —a *fi. fa.* on the same to June Term, 1844, and a levy returned on the land in dispute.  On the execution docket, after the entry of the levy, was an entry as follows:—"Inquisition waived. —See No. 26, Ex. Docket, September Term, 1843."  The *fi. fa.,* No. 26, September Term, 1843, was levied on the same land, and attached to it was a formal and regular waiver of inquisition, dated 10th July, 1843.  A *venditioni exponas,* No. 30, September Term, 1845, was issued upon the Luce judgment, upon which the sheriff sold the premises to R. W. Downey, Mark Gordon, and Godfrey Gordon, for $510.

The defendants then offered in evidence the deed from the sheriff to them, dated 15th, and acknowledged 17th September, 1845, to be followed with proof that John Shriver released all his title to Downey and Gordon, and ratified the sale so made to them by the sheriff; and that the proceeds of said sale were applied to the indebtedness of John Shriver, and that he surrendered the possession of the premises to said Downey and Gordon—to be followed with proof, that he told the person who became the purchaser from Gordon; that the title of Gordon was good, and that he had dispensed with the inquisition, and had waived the same in order to save costs, and that upon this representation the defendant purchased from Gordon.

The plaintiff objected that there was no inquisition or waiver before the sale, and that therefore the sheriff's sale was void and could not be ratified by John Shriver, so as to prejudice the existing judgments created at the time of the sheriff's sale.

"*Per Curiam.*—The Court sustain the objection and overrule the evidence.

"We are of opinion that there was no waiver of the inquisition in this case, but upon a different writ.  The sale must therefore be taken as made without an inquisition or waiver of the same. This being the case, we are of opinion that the sheriff's sale, under which defendants hold, is void and incapable of ratification.  Defendants except."

Errors assigned: The Court erred in ruling out the sheriff's deed, and the evidence offered in connexion with the same.

1. Because the several waivers of inquisition read in evidence by the defendants, though in other cases, justified the sale in this.

2. Because the facts alleged in the defendant's offer, if proved, would estop John Shriver, or the present plaintiff, who claims title under him, from recovering the land.

[Spragg *v.* Shriver.]

*Downey* and *Lazear,* for plaintiff in error.—1. The 44th and 45th sections of the Act relating to executions are for the benefit of debtors. The 44th was but a re-enactment of the previous law, and the 45th but declaratory of the previous practice: 1 *Barr* 183. In 8 *Watts* 422, it was decided that a sale, without inquisition, is void; but it does not decide, if there had been an inquisition or waiver in another case, that it would have been so. It would be unjust and inequitable to permit the defendant to set it up. He had notice of the sale, and all the proceedings: 6 *Barr* 239; *Baldwin* 272.

2. Shriver, the defendant, would be estopped: may be estopped in *pais,* 17 *Ser. & R.* 364; 5 *W. & Ser.* 209; 10 *Barr* 527; 6 *Barr* 239. Wray *v.* Miller, 8 *Harris* 111, approaches nearest to this case. The want of inquisition could only be taken advantage of by the defendant, and by him only in a reasonable time: 2 *Harris* 380; 10 *Barr* 309.

The judgment upon which plaintiffs purchased was no lien upon the land.

*Lindsay* and *Buchanan,* for defendant in error.—The waiver of an inquisition upon one *fi. fa.* does not authorize a sale upon another judgment and *fi. fa.,* and the sale in such case is absolutely void. If other creditors could not claim the benefit of a waiver, when given with the judgment, how could they do so when given upon process? 1 *Barr* 186.

Some of the waivers invoked in this case were several years before the sale. The land had appreciated in value: 1 *Miles* 286.

In 8 *Watts* 422, held that a levy and sale without inquisition is "absolutely void;" affirmed 3 *Harris* 74. The case in 8 *Harris* 380, cited by plaintiff in error, was decided upon the peculiar facts in that case.

Even if the defendant in the execution would be estopped, the defendant in error would not. He was a creditor.

If the sale and deed to plaintiff were void, they were incapable of being ratified: 9 *Barr* 109.

The opinion of the Court was delivered by

LEWIS, C. J.—It was held, in Crowell *v.* Meconkey, 5 *Barr* 174, that the want of an appraisement under the Act of 16th of June, 1842, can be taken advantage of by the defendant alone. In Crawford *v.* Boyer, 2 *Harris* 384, the same principle was applied to the want of a valid inquisition for the condemnation of real estate taken in execution; and it was declared, in the case last mentioned, that even the defendant himself must take the objection at the proper season. In conformity with this principle it was held that the consent of the defendant to a sale of fixtures without inquisition, precluded him from defeating the title of the purchaser:

Mitchell v. Freedly, 10 Barr 208. And in Wray v. Miller, 8 Harris 115, where there was essentially a sale of real estate without condemnation or waiver of inquisition in writing, the title of the purchaser was held to be good by reason of the acquiescence of the defendant in the execution. It is true that there had been a condemnation on a different judgment from the one on which the sale took place, but that judgment had been satisfied two years before the sale. As the condemnation fell with the extinguishment of the judgment on which it was founded, the sale was, as already stated, essentially a sale without condemnation at all. It was there conceded that the sale ought to have been set aside, at the instance of the defendant, for want of inquisition and condemnation; yet, after such acts of acquiescence as the facts and circumstances in that case indicated, neither the defendant nor any other person standing in his shoes could make the objection: 8 Harris 116. The objection, it was repeated, must be made "in a reasonable time:" Id. 117. What is the reasonable time within which it must be made? This question is answered by the Court in Crowell v. Meconkey, 5 Barr 174. It was there said that the owner had a full opportunity to make the objection "before the deed was acknowledged, but sealed his lips, and permitted the purchaser to pay his money, and the deed to be acknowledged, without warning or notice, and thus waived all objections:" 5 Barr 176. Can anything be more reasonable than this? Where one of two persons must suffer a loss, it should fall on the one by whose fault the loss was occasioned. A defendant who has notice that his property is about to be sold by the officer of the law for the payment of debts, and who makes no objection until an innocent purchaser has paid the purchase-money, and received his deed duly acknowledged, is estopped from objecting afterwards. Even if the judgment on which it was sold had been previously paid, the payment cannot be set up against such a purchaser: Dean v. Connelly, 6 Barr 239. But in this case there were several judgments entered, with a written waiver of inquisition in each. Under the statement on the execution docket of the fi. fa. and levy in the suit on which the sale was made, there was an entry, "Inquisition waived, see No. 26, Ex. Docket, September Term, 1843." As the plaintiff and the defendant both treated this as a waiver of inquisition for the purposes of the sale, and as the Court sanctioned the proceedings by issuing a writ commanding the sale, and subsequently confirmed the sale by receiving the acknowledgment of the deed, the purchaser who paid his money in good faith ought not to suffer for treating the entry as the parties themselves, with the approbation of the Court, had treated it. It is true that it was held, in Baird v. Lent, that a sale on a fi. fa., without inquisition, was void. But this was in favour of a purchaser from the defendant in the execution before the sale, whose rights could not be affected in equity by any acts or

[Spragg *v.* Shriver.]

acquiescence of the defendant after he had parted with his interest: 8 *Watts* 422. The reason why the defendant in the execution is in general estopped from impeaching the title after the deed is acknowledged, is that the proceeding was for his benefit; it was the means of performing a duty which he had neglected. The officers of the law are thus in some sort his agents. The law provides that he shall have notice of the sale, and gives him the exclusive right to object to or waive irregularities. Under such circumstances, if he permits a purchaser to pay his money and receive the deed duly acknowledged, without objection, the money can never be recovered back by the purchaser. It must be appropriated to the benefit of the defendant in the execution. If the objection comes too late for the relief of the purchaser, it certainly is too late for the defendant in the execution. The first is free from fault of any kind. The last is guilty of gross negligence in permitting an innocent person to be injured by proceedings which he had the power to arrest or set aside. The law will not permit him thus to make profit out of his own wrong.

If these views be correct, the case is stronger against the defendant in the execution after he has actually secured the payment of his debts out of the proceeds of sale. It is true that the Court thought otherwise in Menges *v.* Oyster, 4 *W. & Ser.* 20. But that decision was so contrary to equity that the legislature passed an Act expressly confirming the sale: *P. L.* 1843. And the Court, on reconsideration, overruled the former decision: Menges *v.* Wertman, 1 *Barr* 218. The Act was clearly unconstitutional. The legislature possess no judicial power, and it was a most mischievous error to concede to that body the authority to confirm a title on the ground of a moral right to it, arising from the payment of the purchase-money to the benefit of the former owner, with his acquiescence. This error was acknowledged in a subsequent case by the judge, whose casting vote made up a majority in favour of the first decision: Dale *v.* Medcalf, 9 *Barr* 108. The equitable ground for confirming the title of the sheriff's vendee fully justified the Court in sustaining it, independent of legislative interference, on the principles always applied by the Courts, that whatever in equity and good conscience ought to be done by a vendor, shall be considered as done. The last decision was correct in its result, but the reasons assigned for it have not been adhered to by the judges who adopted them. The first is contrary to principle. Neither can be relied on as authority for anything.

In McPherson *v.* Cunliff, 11 *Ser. & R.* 422, it was held that the application of the proceeds of an Orphans' Court sale to the benefit of a minor child estopped him from impeaching the title of the purchaser. In Wilson *v.* Bigger, 7 *W. & Ser.* 111, it was said that this position, taken by Judge DUNCAN, in McPherson *v.* Cunliff, " has never been disputed, and has controlled the cause in

[Spragg v. Shriver.]

some pretty strong cases;" and it was held, in conformity with this doctrine, that, where a guardian united with the other heirs in asking a sale by the Orphans' Court, and the ward, after he came of age, received a portion of the proceeds, the latter was thereby estopped from impeaching the title of the purchaser: 7 *W. & Ser.* 111. In Stroble *v.* Smith, 8 *Watts* 280, it was decided that a judgment-creditor, who accepts his share of the purchase-money arising from a sheriff's sale, is estopped from denying the validity of the sale. In Crowell *v.* Meconkey, 5 *Barr* 176, which was the case of a sheriff's sale, and the application of the proceeds to the judgment-creditors, the Court distinctly declare that, "if the sale had been void, the reception of the purchase-money would have made it valid." It was there held that "the receipt of the money by the judgment-creditors has the same effect as if the debtor's trustee received it himself:" *Id.* 171. In Mitchell *v.* Freedly, 10 *Barr* 208, it was held that, where a sheriff's sale was confirmed without objection, the application of the proceeds to the debts of the defendant in the execution "is the same thing as if paid to himself." It is fully settled upon principle and authority that, where a sale is made for the benefit of any one, the receipt of the proceeds by such person validates it. In such a case, the supposed distinction between a void and voidable sale is immaterial: 7 *W. & Ser.* 111; 10 *Barr* 208; 5 *Barr* 176; 8 *Watts* 280; Commonwealth *v.* Shuman's Executors, 6 *Harris* 346; Adlum *v.* Yard, 1 *Rawle* 171; Furness *v.* Ewing, 2 *Barr* 479; Smith and Wife *v.* Warden *et al.*, 7 *Harris* 424.

If the defendant in the execution may estop himself from impeaching a sheriff's sale by previous consent to dispense with an inquisition, or by a subsequent neglect to make objections to the proceedings, he may certainly confirm the sale by surrendering the possession and executing a release. He may also preclude himself from making objections by representations that he had consented to dispense with an inquisition, and that the title was good, if by those representations the person to whom they were made was induced to purchase the property from the sheriff's vendee.

As the dates of the surrender of possession and release are not stated, no question is raised in regard to the regularity of the revival of the judgment under which the plaintiff below derived title.

We are of opinion that the evidence offered, as stated in the bill of exception, ought to have been received.

Judgment reversed and *venire facias de novo* awarded.