Argued May 6, affirmed June 8, rehearing denied July 6, 1915.

## MASCALL v. MURRAY.*

(149 Pac. 517; 149 Pac. 521.)

**Adverse Possession—Pleading—"Hostile"—"Peaceable."**

1. Where the complaint, in suit to quiet title secured by adverse possession, alleged that such possession had been "peaceable" and "hostile," there was no such conflict in the meaning of the terms as implied that the possession had not been hostile to the owner, since "hostile" meant that the plaintiffs had been in possession as owners as distinguished from one holding in recognition of or in subordination to the true owner, while "peaceable" meant that their possession had been undisturbed and its continuity unbroken.

**Equity—Pleading—Reply—Departure.**

2. In suit to quiet title, where the complaint set up in one paragraph fee-simple ownership, and in another title by adverse possession, while the reply alleged that it had been gained by sale on execution, concluding by saying that, immediately after such sale, the

---

*Generally as to use of possessory title as weapon of offense and to quiet title, see note in 46 L. R. A. (N. S.) 487, 506.

As to lapse of time as bar to confirmation of judicial sale, see note in 43 L. R. A. (N. S.) 630.    REPORTER.

plaintiffs took possession and held continually, the complaint and reply were not so inconsistent as to render erroneous the refusal of the court to strike the reply as a departure, since the complaint's allegation of fee-simple ownership rendered permissible its further amplification in the reply by the allegation of title by the sale.

### Quieting Title—Possession by Plaintiff—Waiver by Defendant.

3. Where defendants, in a suit to quiet title, affirmatively asked complete relief, all parties submitting themselves to the jurisdiction of the court, such defendants waived the fact that plaintiffs were not in actual possession of part of the land at the time of suit.

### Adverse Possession—Pleading—Issues.

4. In a suit to quiet title, an allegation of ownership in fee was sufficient to admit proof of title by adverse possession, since in such a suit it is not necessary for the complaint to divulge the chain of title or reveal probative facts; it being sufficient if the pleadings allege and name a substantial interest in the plaintiffs.

### Quieting Title—Title to Support Suit—Equitable Title.

5. The owner of an equitable, as well as the owner of a legal title, may sue to quiet title to determine all adverse claims affecting his interest.

### Quieting Title—Title by Equitable Estoppel—Pleading.

6. In a suit to quiet title, where the complaint alleged fee-simple ownership and title by adverse possession, the answer was a general denial, and the reply alleged title under sale on execution, and the evidence failed to support the claim of adverse possession, while it appeared that the execution sale did not confer a legal title on the plaintiffs, the evidence supporting an equitable title only, through the acquiescence of the defendants in the assertion of title by the plaintiffs, although an equitable estoppel, must be pleaded to make it available, nevertheless the plaintiffs could rely on the equitable estoppel of the defendants to vest title in them; for the answer of general denial afforded the plaintiffs no opportunity to plead title by estoppel in the reply, while the equities of an unpleaded estoppel may be availed of if such estoppel was not pleaded for lack of opportunity.

### Quieting Title—Pleading—Legal and Equitable Title—Variance.

7. In an action to quiet title, where opportunity to plead an equitable title by estoppel is presented, but only a legal title is alleged, while equitable title is proved, such proof is a fatal variance.

### Execution—Sale of Realty—Validity.

8. Where there was no official record of a sale of realty on execution, no order was made confirming the sale, and no deed delivered, although a certificate of sale was given to the purchasers, the legal title to the property remained in the judgment debtors, and the sheriff's sale did not convey a fee title, even if such sale was in fact regular in all respects.

> [As to whether purchaser at judicial sale may be compelled to take title based on adverse possession, see note in Ann. Cas. 1912D, 1179.]

Execution—Title by Void Sale Equitably Confirmed by Judgment Debtors.

9.   Where a sale of realty under execution did not vest title in the purchasers because there was no official record thereof, no order confirming it, and no deed delivered, the land being assessed thereafter to the purchasers, they and those claiming under them paying taxes, which  the judgment debtors never did thereafter, and where such debtors waited 18 years, until the purchasers sued to quiet title, before claiming title designedly planning to delay until the statute of limitations barred any indebtedness of theirs before asserting title so as to recover the land free of the claims of creditors, the silence and acquiescence of the judgment debtors was an equitable confirmation of the void sale under execution, operating to validate what was in point of law no sale at all.

From Malheur: DALTON BIGGS, Judge.

In Banc.   Statement by MR. JUSTICE HARRIS.

This is a suit by W. R. Mascall and Annie Jackson against Alexander Murray, Jennie Murray, Adam Murray, William Murray and Malcolm Moody to quiet title to land which is referred to in the record as the Cupp ranch and is described as follows:

The southeast quarter of the northwest quarter, the east half of the southwest quarter and the southwest quarter of the southwest quarter, section 3, the east half of the northeast quarter of  section 9, and the southeast quarter of the southeast quarter of section 4, in township 20 south of range 37 east of Willamette Meridian in Malheur County.

The land was owned by Alexander Murray, Adam Murray and William Murray as partners doing business under the firm name of Murray Bros.   On April 29, 1891, the partners made an assignment for the benefit of their creditors, and on that day conveyed the above-described land, as well as other property, to Malcolm Moody as assignee, who qualified and duly accepted the trust.   Thereafter, on June 13, 1891, pursuant to Section 7442, L. O. L., the creditors elected Kenneth McRae as assignee in lieu of Malcolm Moody,

who had been named by the debtors. The adminstration of the estate was not completed until 1899, when the final report of McRae was approved. Neither Moody nor McRae, while acting as assignee, attempted to sell or dispose of the land in dispute; both Moody and McRae acted on the assumption that the land involved herein had been sold at a sale on execution.

W. R. Mascall and Annie W. Jackson, on March 20, 1891, commenced an action at law in the Circuit Court for Grant County against Adam Murray, Alexander Murray and William Murray, as partners, for $2,250, due on a promissory note, together with interest at the rate of 10 per cent per annum from October 1, 1889, $250 attorney's fees and costs and disbursements. Summons and complaint were served upon Alexander Murray on March 24, 1891, in Grant County and on Adam Murray and William Murray on April 22, 1891. A writ of attachment was issued on March 20, 1891, and returned April 20, 1891, showing that the sheriff had levied on the land involved in the suit on April 6, 1891. The attorneys for the plaintiffs in the law action on April 20, 1891, filed a motion for a default judgment, and order of sale of attached property; and on the next day the clerk of the court, acting without an order from the judge and believing that Section 185, L. O. L., afforded sufficient authority, entered a judgment against the partners for $2,600, the amount of principal and interest due on the note, $250 as attorney's fees, costs and disbursements, and further ordered a sale of the attached property. The plaintiffs herein claim that an execution was issued on the judgment in the law action, and that thereafter they purchased the land at a sale on execution. There is no record evidence of sale or confirmation of sale, and there is no record in the clerk's office showing

that an execution was, at any time, returned, although after the title of the case a notation appears on the execution docket thus:

"1891, July 22; judgment for plaintiff, $2,600.00; attorney's fees, $225.00; costs and disbursements, $88.89; this writ and return $5.00, 1891, July 22; execution issued at instance of Parrish & Cozad."

The complaint filed in this suit alleges:

"That the plaintiffs are now and have been ever since 1891, the owners in fee and in the actual, open, notorious, exclusive, hostile and peaceable and adverse possession of"
—the described land; and in a separate paragraph it is averred:

"That the said plaintiffs are the owners in fee to the said premises, and that the said defendants claim an estate or interest therein adverse to the said plaintiff."

The Murrays filed an answer which, after certain denials and an admission that defendants claim an interest in the property, alleges affirmatively that the partners made an assignment for the benefit of their creditors and conveyed their property to Malcolm Moody as assignee; that Kenneth McRae was elected assignee by the creditors, and thereafter Moody was discharged by the court; that in 1899 McRae was discharged and the estate closed; that Moody did not, at any time, transfer the land to McRae, and the court did not make any order directing Moody to transfer the land to McRae; that neither Moody nor McRae sold or disposed of the real estate, and that since the estate is now closed, whatever remains undisposed of must be treated as a surplus; and that since the land is a part of the surplus and Moody as assignee holds

the record title he occupies the position of a trustee who is bound to reconvey to the Murrays. The answer concluded with a prayer that Moody be decreed to be the holder of the title to the premises in trust for the Murrays; that Moody be required to convey to the Murrays; that title in fee be decreed to rest solely in Alexander Murray, Adam Murray and William Murray; that title be quieted in the Murrays as against Malcolm Moody, the plaintiffs and all other persons whomsoever; that plaintiffs be decreed to have no title or interest in the property and for such other and further relief as to the court shall seem just and equitable. The reply of plaintiff, after certain denials and admissions, alleges the commencement of the law action, the attachment proceedings, and the rendition of the judgment, already mentioned; it is further averred that on or about June 22, 1891, an execution was issued on the judgment, and on August 1, 1891, the sheriff sold the land to plaintiffs and gave them a sheriff's certificate of sale; that immediately after such sale the plaintiffs entered into the actual possession of the premises, and have held the same continuously. Moody was made a party defendant and he filed an answer which is substantially the same as the reply of plaintiffs. The decree of the Circuit Court was for the plaintiffs, and the Murrays appealed.          AFFIRMED. REHEARING DENIED.

For appellants there was a brief with oral arguments by *Mr. William H. Brooke* and *Mr. Ralph W. Swagler.*

For respondents there was a brief over the names of *Mr. J. E. Marks* and *Mr. Errett Hicks,* with an oral argument by *Mr. J. E. Marks.*

Mr. Justice Harris delivered the opinion of the court.

It will be observed that the plaintiffs in this suit held a promissory note signed by the Murrays, and that this note was reduced to the form of a judgment eight days before the partners made an assignment for the benefit of their creditors. The plaintiffs claim that an execution was issued on the judgment, and that thereafter they purchased the land at a sheriff's sale, received a certificate of sale, and took immediate possession. They take the position that their uninterrupted adverse possession has ripened into an absolute title. They also contend that long-continued acquiescence by the Murrays operates as an equitable confirmation of the sale, which will of itself debar the Murrays from asserting any interest in the property, even though the plaintiffs fail to establish adverse possession. The Murrays challenge both contentions of the plaintiffs, and after arguing that plaintiffs received nothing at the alleged sale on execution, the partners insist that Moody holds the title to the land as a trustee for them, and that therefore they are entitled to prevail.

1. Before proceeding with a discussion of the rights of the parties to the property it will be necessary first to dispose of debated questions arising from the pleadings. The complaint alleges that the possession of plaintiffs had been peaceable and hostile, and the defendants argue that the term "peaceable" conflicts with the word "hostile," and that such conflict in the meaning of the terms necessarily implies that the possession had not been hostile to the owner. The term "hostile" is used in the sense that the plaintiffs have been in possession as owners as distinguished from

one who holds in recognition of or in subordination to the true owner: 2 C. J. 122. The word "peaceable," as employed by the plaintiffs, merely means that their possession has been undisturbed and the continuity unbroken: 2 C. J. 168. It is therefore clear that there is no conflict in the significance of the words used in the complaint, and that this extremely technical objection to the pleading is without merit.

2. The Circuit Court denied a motion of the defendants to strike out the reply, and this ruling is assigned as error. The argument of the defendants proceeds upon the theory that, having alleged in the complaint that title had been consummated by adverse possession, the plaintiffs could not, in their reply, assert a title derived in any other manner or acquired from any other source. The reply does not, however, depart from the kind or quantity of title asserted in the complaint. The complaint alleges adverse possession, and the reply fortifies and strengthens the claims set forth in the primary pleading by alleging the facts concerning the action at law, the judgment, the sale on execution, and the receipt of a certificate of sale, and concludes by saying that immediately after the sale the plaintiffs entered into actual possession and have so held the land continuously. The reply only details the transactions relied on in support of the entry upon and holding of the land. The complaint and reply must be construed together, and when so considered one pleading does not vary from the other: *Pioneer Hardware Co.* v. *Farrin,* 55 Or. 590, 593 (107 Pac. 456); *Holmes.* v. *Wolfard,* 47 Or. 93, 98 (81 Pac. 819); *Goodwin* v. *Tuttle,* 70 Or. 424, 430 (141 Pac. 1120).

3. The pleadings of both parties, however, have extended the scope of the inquiry beyond the single ques-

tion of adverse possession. The defendants cannot avail themselves of the fact that the plaintiffs were not in the actual possession of a part of the land at the time of the commencement of this suit because the Murrays have, by their answer, affirmatively asked for full and complete relief, and all the parties have submitted themselves to the jurisdiction of the court: *Moore* v. *Shofner,* 40 Or. 488, 493 (67 Pac. 511) ; *Bradtl* v. *Sharkey,* 58 Or. 153 (113 Pac. 653, 654) ; *Carroll* v. *McLaren,* 60 Or. 233 (118 Pac. 1034).

4, 5. In a suit to quiet title it is not necessary for the complaint to divulge the chain of title, or to reveal the probative facts, but it is sufficient if it appears from the pleadings that the plaintiffs own some substantial interest which is named, and the title may be shown in any manner authorized by law: *Zumwalt* v. *Madden,* 23 Or. 185 (31 Pac. 400) ; *Cooper* v. *Blair,* 50 Or. 394, 397 (92 Pac. 1074) ; *Savage* v. *Savage,* 51 Or. 167, 170 (94 Pac. 182). The allegation of ownership in fee was alone sufficient to enable proof of title by adverse possession: *Cooper* v. *Blair,* 50 Or. 394, 397 (92 Pac. 1074) ; *Mitchell* v. *Campbell,* 19 Or. 198 (24 Pac. 455) ; *Neal* v. *Davis,* 53 Or. 423, 435 (99 Pac. 69, 101 Pac. 212) ; *Stephenson* v. *Van Blokland,* 60 Or. 255 (118 Pac. 1026) ; *Smith* v. *Algona Lbr. Co.,* 73 Or. 1 (143 Pac. 921) ; *Hamm* v. *McKenny,* 73 Or. 347 (144 Pac. 435). The owner of an equitable as well as the possessor of a legal title may maintain a suit to determine all adverse claims affecting his interest: *Ladd* v. *Mills,* 44 Or. 224 (75 Pac. 141) ; *Holmes* v. *Wolfard,* 47 Or. 93, 98 (81 Pac. 819) ; *Kollock* v. *Bennett,* 53 Or. 395, 402 (100 Pac. 940, 133 Am. St. Rep. 840, 5 R. C. L., § 17, p. 649).

Referring again to the complaint, it will be noted that the plaintiffs assert that they have been in adverse possession of the premises, and then in a separate paragraph they assert that they are the owners in fee of the premises; and although the reply only explains the claim of adverse possession, and therefore harmonizes with the first pleading, nevertheless, in view of the pleadings as written by both parties when considered in connection with the relief asked for, the reply would not produce a variance even if construed as an assertion that an absolute title had been created by the sheriff's sale and the issuance of a certificate of sale. The complaint does not declare that the only title possessed by the plaintiff is that of adverse possession, but there is the broad and general allegation of fee-simple ownership set forth in a separate and distinct paragraph, and the averment of ownership as made in the reply cannot be successfully assailed by the objection urged by defendants.

6, 7. There is yet another phase of the case requiring attention. The complaint and reply both allege a legal title. The evidence fails to support the claim of adverse possession; the sale on execution did not confer an absolute title in fee simple, and at the most the proof supports an equitable title only. A suit to quiet title may sometimes end in complete failure merely because a legal title is alleged and an equitable title is proved, for the reason that proof of the latter constitutes a variance from the averment of the former kind of title; and fair examples of the rule and its application are afforded by *Hersey* v. *Lambert,* 50 Minn. 373 (52 N. W. 963); *Stewart* v. *Lead Belt Land Co.,* 200 Mo. 281 (98 S. W. 767); *Hebden* v. *Bina,* 17 N. D. 235 (116 N. W. 85, 138 Am. St. Rep. 700).

The principle that an equitable estoppel must be pleaded to make it available is firmly established in this jurisdiction, and is generally recognized (*Nickum* v. *Burckhardt,* 30 Or. 464 (47 Pac. 888, 48 Pac. 474, 60 Am. St. Rep. 822); *Union St. Ry. Co.* v. *First Nat. Bk.,* 42 Or. 606 (72 Pac. 586, 73 Pac. 341), the design of the rule being to prevent the assertion of the truth even (*Sabin* v. *Phoenix Stone Co.,* 60 Or. 378 (118 Pac. 494, 119 Pac. 724). The doctrine requiring the pleading of an estoppel has a qualification, however, which exists in cases where an opportunity has not been presented for pleading the estoppel relied on, and if the estoppel is not pleaded because of the absence of opportunity, the equities may nevertheless be availed of: *Tieman* v. *Sachs,* 52 Or. 560 (98 Pac. 163); *Morback* v. *Young,* 58 Or. 135 (113 Pac. 22); *West Side Lbr. Co.* v. *Herald,* 64 Or. 210 (128 Pac. 1007, Ann. Cas. 1914D, 876); *Gladstone Lbr. Co.* v. *Kelly,* 64 Or. 163 (129 Pac. 763). The answer of the defendants challenged the title of plaintiffs by a general denial, and then for the affirmative defense relied on a recital of the assignment proceedings and the claim that Moody held the title to the property in trust for the Murrays. As a rule, a general denial does not afford to the plaintiffs an opportunity to assert an estoppel in a reply. The separate defense interposed by the defendants constitutes the basis for the affirmative relief sought by the defendants, and the truth of the assertion that the assignee did not sell or dispose of the land did not so affect or impinge upon the equities connected with and flowing from the sale of the land on execution as to require the plaintiffs to proclaim those equities in their reply, and therefore, if the facts are such as to constitute an equitable estop-

pel, the plaintiffs in this suit are not precluded from taking advantage of it; and, moreover, the conclusion arrived at is strengthened and supported by the fact that all the litigating parties have submitted themselves to the jurisdiction of a court of equity, and have asked for full and complete relief, thereby opening the door to a full inquiry: *Hunter* v. *Amish*, 164 Iowa, 397 (145 N. W. 877). All the parties to the controversy are actors, both the plaintiffs and defendants assert title, and both ask for complete relief, and, such being the situation, no good purpose.can be subserved by denying to the plaintiffs the privilege of proving some title and then debar them from what rights they in fact have merely because they have been so bold as to plead a greater title. It must be borne in mind that all parties are in a court of equity seeking a form of relief the character of which is the same both in quality and quantity. Permission to prove an equitable title under an allegation of a legal title in a situation analogous to the instant case is aptly illustrated in *Van Vranken* v. *Granite County*, 35 Mont. 427 (90 Pac. 164); *Oliver* v. *Dougherty*, 8 Ariz. 65 (68 Pac. 553). See, also, *Glasmann* v. *O'Donnell*, 6 Utah, 446 (24 Pac. 537).

8. The plaintiffs have failed to prove adverse possession of all the land known as the Cupp ranch for the period of time necessary to confer an absolute ownership; and, although the defendants suggest that they held the property adversely during a period of 10 years subsequent to the sale on execution, they have likewise failed to sustain the intimation. There is no official record of the sale; apparently the execution was not returned, no order was made confirming the sale, and no deed was delivered, although a certificate

of sale was given to the plaintiffs herein; and there-fore the legal title remained in the judgment debtors, and the sale by the sheriff did not, of itself, have the effect of conveying a fee-simple title even if it be as-sumed that such sale was regular in all respects: *Faull* v. *Cooke,* 19 Or. 455 (26 Pac. 662, 20 Am. St. Rep. 836); *Kaston* v. *Storey,* 47 Or. 150 (80 Pac. 217, 114 Am. St. Rep. 912).

9. Since the sale on execution did not operate to convey an estate in fee, it remains to be seen whether the plaintiffs have acquired any equitable interest which a court of equity will recognize as being equiva-lent to an absolute ownership; and in the considera-tion of this question the attempted sale by the sheriff will be treated as an utterly void proceeding, and not simply as voidable or erroneous. There is ample proof that the sheriff went through the form of a sale on execution at some time in the summer of 1891; Mascall bid in the property for the plaintiffs for $3,104, the full amount of the judgment, with costs, and a certificate of sale was issued to the successful bidder. After keeping the certificate of sale for some time Mascall sent it to his attorneys, with directions to do whatever was necessary to be done. No steps were taken to secure a confirmation of the sale or the execution of a deed; and the certificate received by the attorneys was lost or destroyed. The land was not assessed to the Murrays after 1891, but was as-sessed to Mascall, or a person claiming under him. The plaintiffs and those claiming under them paid the taxes each year, and the defendants neither paid nor offered to pay any taxes whatever after March, 1891. Malcolm Moody, as assignee, on November 9, 1891, filed a report with the clerk of the court, showing that

the Cupp and Z. Smith ranches had been sold to satisfy the judgment obtained by Mascall and Jackson, and thereafter the report was approved. Kenneth McRae filed a report as assignee on June 3, 1893, which recited that:

"The assignee would respectfully ask that the court confirm the sale of the Cupp and Zack Smith ranches in Malheur County, sold to W. R. Mascall at sheriff's sale at Vale, August 29, 1891. The assignee has corresponded with most possible buyers, but can get no offer that will justify him in redeeming said lands."

In his final supplemental report and petition for discharge as assignee McRae stated that:

"The Zack Smith ranch and the Cupp ranches situated in Malheur County and valued in said inventory at $4,000 was sold on execution to satisfy the Mascall and Jackson judgment."

In 1904, Oscar Hill made a contract with Mascall for the purchase of the Cupp ranch and entered upon and took actual possession of the greater part of the premises; at the time Hill moved on the land the fences were down, and the land was practically open range; Hill built fences and inclosed about 125 acres; the Murrays knew that he had moved on the Cupp ranch, and did not notify him to leave. The plaintiffs thought they owned the land, and claimed ownership. The partners knew that the plaintiffs obtained a judgment; that the land had been attached; that Mascall claimed the land "a long, long time ago"; and that Mascall had sold a part of the property a "long time ago." Adam Murray testified that five or six or seven or eight years prior to 1912 he consulted an attorney with reference to taking steps to clear up any clouds on the title of the lands mentioned herein, and was advised

to wait until 10 years had elapsed after the closing
of the assignment proceedings.  This suit was com-
menced by the plaintiffs on April 2, 1909, and not until
after that time did the Murrays make an avowal of
any right to the land; they waited 18 years before
openly claiming any title to the litigated premises;
they not only remained silent, but designedly waited
for the express purpose of taking advantage of the
statute of limitations as a bar against any unpaid in-
debtedness whenever the necessary time had run, with
the expectation of paying their debts with time only
and of recovering the land freed from the claims of
others.  Although the sale on execution may be re-
garded as an utterly void proceeding, which is with-
out vitality when considered alone, nevertheless a
court of equity, under the circumstances narrated
herein, will deem the conduct, silence and acquiescence
of the debtors as an equitable confirmation which oper-
ates to make a good sale out of a transaction which,
standing by itself, was in contemplation of law no sale
at all; and this equitable principle as defined and ap-
plied here is fortified by an impregnable bulwark of
authority: *Fallon* v. *Worthington,* 13 Colo. 569 (22
Pac. 960, 16 Am. St. Rep. 231, 6 L. R. A. 708); *Mc-
Ginnis* v. *Caldwell,* 71 W. Va. 375 (76 S. E. 834, 43
L. R. A. (N. S.) 630); *Tipton* v. *Powell,* 2 Cold. (Tenn.)
22; *Smith* v. *Wert,* 64 Ala. 34; *Gowan* v. *Jones,* 10
Smedes & M. 164; *Smith* v. *Warden,* 19 Pa. 424; *Maple*
v. *Kussart,* 53 Pa. 348 (91 Am. Dec. 214); *McConnell* v.
*People,* 71 Ill. 481; *Spragg* v. *Shriver,* 25 Pa. 282 (64
Am. Dec. 698); *Tooley* v. *Gridley,* 3 Smedes & M. 493
(41 Am. Dec. 628); *Redus* v. *Hayden,* 43 Miss. 614;
*Shivers* v. *Simmons,* 54 Miss. 520 (28 Am. Rep. 372;
5 R. C. L., § 43, p. 671); Freeman, Void Jud. Sales,

§ 50; Rorer, Jud. Sales, § 13. The defendants have not offered to reimburse the plaintiffs for the taxes paid, and have not in any way offered to do equity: 32 Cyc. 1355.

On the record as made by the parties, the defendants cannot successfully assert any claim to the land, and the decree of the Circuit Court is affirmed.

AFFIRMED. REHEARING DENIED.

<hr>

Denied July 6, 1915.

ON PETITION FOR REHEARING.

(149 Pac. 521.)

*Mr. William H. Brooke* and *Mr. Ralph W. Swagler,* for the petition.

*Mr. J. E. Marks* and *Mr. Errett Hicks, contra.*

In Banc. MR. JUSTICE BENSON delivered the opinion of the court.

Counsel for appellants in their petition for a rehearing have presented a very interesting and able argument in behalf of their contention, but after a careful review of the matter we see no reason for changing our views as expressed in the opinion of the court. The petition is therefore denied.

REHEARING DENIED.