[Filed June 11, 1885.]

## M. J. KINNEY v. E. D. HEATLEY ET AL.

ACCOUNT STATED—FALSE REPRESENTATION—ADMISSION.—Where an account presented by a creditor is accompanied by a false representation in regard to the existence of a material fact in relation thereto, within the knowledge of the creditor, the acquiescence of the debtor in the account, in ignorance of such fact and relying upon such statement, will not preclude him from afterwards disputing the account in a settlement between the parties; nor will he be bound by an admission of the correctness of such account made upon the faith of such representation.

TRUSTEES—COMPENSATION—VOID AGREEMENT.—The trustees of an insolvent estate are entitled to a reasonable compensation for their services, but their agreement with one of their number to make the purchases and sales necessary in conducting the business of the estate, and to pay him a commission thereon, is void.

ACCOUNTING — TENDER — COSTS AND DISBURSEMENTS — ATTORNEY'S FEES. Where an assignor for the benefit of creditors brings a suit against his assignees for an accounting, he will not be entitled to costs unless at the time of instituting the suit he tenders a sum sufficient to pay the balance still due the creditors. But the assignees in such case, if there is property in their hands sufficient to satisfy all the creditors, cannot charge the estate with their attorney's fees beyond the amount allowed by statute.

CLATSOP COUNTY. Defendants appeal. Decree modified.

J. C. Moreland and B. Killin, for Appellants.

Where an account has been presented in the regular course of trade, and no objection has been made to it, it becomes thereby a stated account. (Wait's Actions and Defenses, 194; 1 Story's Eq. Jur., sec. 526; Freeland v. Heron, 7 Cranch, 147; Terry v. Sickles, 13 Cal. 427; White v. Hampton, 10 Iowa, 238; Murray v. Toland, 3 Johns.

Ch. 569; *Stebbins* v. *Niles*, 25 Miss. 267; *Philips* v. *Belden*, 2 Edw. Ch. 1; *Baker* v. *Biddle*, Baldw. 394, 418; *Freeman* v. *Howell*, 50 Am. Dec. 561; *Day* v. *Caton*, 119 Mass. 515; *Claire* v. *Claire*, 10 Neb. 57.) The law imposes a penalty for the silence, however, which is, that the burden of proof is shifted from the party whose interest it is to establish the account, and the account will stand in its entirety, unless the other party, by affirmative proof, can impeach it. The penalty is not the creation by law of an entirely new contract between the parties, but the shifting from one party to the other of the burden of proof." (1 Story's Eq. Jur., sec. 528; *Bainbridge* v. *Wilcocks*, Baldw. 540; *Life Ins. Co.* v. *Carpenter*, 49 N. Y. 668; *Guernsey* v. *Rexford*, 63 Id. 631; *Perkins* v. *Hart*, 11 Wheat. 256; *Wiggins* v. *Burkham*, 10 Wall. 131; *Oil Co.* v. *Van Etten*, 107 U. S. 332; *Young* v. *Hill*, 67 N. Y. 162; *Freeland* v. *Heron*, 7 Cranch, 147.) One trustee may employ his co-trustee as his agent, or one trustee may act for the whole, within the scope of those duties, where an agent may be employed. And where the duties thus performed are beyond the ordinary scope of the trust, or require special knowledge or extraordinary skill, the trustee performing them may be allowed extra compensation on account thereof. (*Wendell* v. *French*, 19 N. H. 205; *Ellig* v. *Naglee*, 9 Cal. 684; *Lowrie's Appeal*, 1 Grant Cas. 373; *Pedrick's Estate*, 5 Phila. 478; *McElhenny's Appeal*, 46 Pa. St. 348; *Blake* v. *Pegram*, 101 Mass. 597; *Kendall* v. *New England Carpet Co.*, 13 Conn. 383; *Lee* v. *Lee*, 6 Gill & J. 320; *Mitchell* v. *Holmes*, 1 Md. Ch. 287; *Post* v. *Mackall*, 3 Bland. 486, 529; *Bank* v. *Martin*, 3 Md. Ch. 225; *Harris* v. *Martin*, 9 Ala. 900; *Fulton* v. *Davidson*, 3 Heisk. 643.)

*C. W. Fulton* and *Raleigh Stott*, for Respondent.

To recover on an account stated, when it is disputed,

it is necessary "to prove an existing debt or demand, and the stating of the account." (*Driggs* v. *Ganetson*, 25 N. J. Eq. 178; *Branard* v. *Marshall*, 8 Pick. 193; *Lockwood* v. *Thorn*, 18 N. Y. 286; *Volkening* v. *De Graaf*, 81 Id. 268; *Anding* v. *Levy*, 57 Miss. 62; *Descelles* v. *Kadmus*, 8 Iowa, 51.) "If trustees are factors, or brokers, or commission agents, or auctioneers, or bankers, or attorneys, or solicitors, they can make no charges against the trust estate for services rendered by them in their professional capacity to the estate of which they are trustees. (1 Perry on Trusts, sec. 432, and note; *Bliss* v. *Lawrence*, 17 Am. Rep. 274; *Hall* v. *Hall*, 78 N. Y. 535.)

THAYER, J.    This appeal is from the Circuit Court for the county of Clatsop. The respondent brought a suit in that court against the appellants, Heatley, Grace, and Ten Bosch, trustees of the estate of the said respondent, for the payment of certain debts, to compel them to account for the said estate, and to enjoin them from selling a certain part thereof. It is disclosed by the facts in the case that the respondent, about 1876, at Astoria, in said county, engaged in the cannery business; that he was the proprietor of a cannery, and put up fish and beef in cans for market, and sold and shipped large quantities thereof to England; that he continued in said business until the nineteenth day of February, 1878, when, in consequence of extensive liabilities that had accumulated against him, he was compelled to suspend business, and compromise his debts with his creditors; that on said last-mentioned day, the said respondent, at San Francisco, in the state of California, entered into an agreement with a large number of his creditors, by the terms of which he agreed to execute to the said Heatley, Grace, and Ten Bosch a deed of trust and transfer of his property in the manner and form of an instrument then prepared and

agreed upon, and which was to be executed by both of said parties; the said creditors agreeing, on their part, to extend the time of payment of their respective debts they held against him until the first day of October, 1878, and to release him from all obligations to pay said debts or either of them, and to look wholly to the property which should be transferred in said deed of trust so agreed to be made, and the proceeds thereof, for the payment of said debts, and that the said release should take effect upon the execution of said deed; that subsequently, and on the sixteenth day of March, 1878, in compliance with the said agreement, the said respondent executed to the said Heatley, Grace, and Ten Bosch, as such trustees, a deed of trust conveying to them the said cannery, and all his real and personal property, excepting such as was exempt from execution, and also the sum of $500 in cash. Said deed contained the following clauses and provisions, viz.:

" Should said trustees deem it advisable, and for the best interest of all concerned, so to do, and in that event to procure the advancement of the necessary means and provisions for the same on the most favorable terms that the same can be obtained, to operate and conduct said business, and to sell and dispose of the proceeds thereof, and to apply the money and profits arising from such sale or disposition on the first day of October, 1878:

" *First*, to the payment of the necessary advances and running expenses of said business; to make the best arrangement or compromise that they can with French & Co., of The Dalles, and Thomas Monteith, of Albany, Oregon, for all claims that they have against the said party of the first part, and with any and all other preferred or other creditors of said party of the first part, who have not entered into the agreement under which this deed of trust is executed; to the discharge of the

debts of said party of the first part, and said fishery or cannery. No interest to be allowed on any claim from the first day of January to the first day of October, 1878.

"Also, in trust, to sell, dispose of, and transfer any or all of the property herein transferred to said parties of the second part, not included in said Astoria fishery, or pertaining thereto, on or before the first day of October, 1878, and apply the proceeds thereof in the same manner as the proceeds, money, and profits of said fishery or cannery hereinbefore authorized; but the money arising from such sales, as well as that arising from the sale of salmon of the canning season, or so much thereof as shall be necessary, may be applied before the first day of October, 1878, in the discharge of the advances made for operating and conducting said fishery business hereinbefore specified. And the money arising from the sales of the lots for which bonds have been given to said party of the first part, as hereinbefore designated, as well as the sums due from the sales of the said bonded lots already made, shall be applied first to the discharge of the promissory notes given for the same, and thereafter as balance is sold before the first of October, 1878."

"*Fourthly.* But should the said trustees find it impracticable to run the said cannery, that then the said trustees shall, with all convenient dispatch, dispose of the property hereby conveyed, including said Astoria fishery, and the property pertaining thereto, at such times as they, or a majority of them, shall deem most advantageous for the interest of all persons concerned, anything hereinbefore contained as to the time of such sale notwithstanding.

"And said party of the first part does hereby authorize and empower any two of the said parties of the second part to execute any of the conveyances in instruments of any name or nature, or do any act whatsoever, necessary

to carry out the intention of this deed, with the like force and effect as if all three had joined in such action.

"Also, in trust after the first day of October, 1878, to sell, dispose of, and transfer all the property herein transferred to said parties of the second part, and not then disposed of, after allowing said party of the first part sixty days to discharge the balance of said debts, appropriating the property, or so much as may be necessary, for the same. The proceeds of such sales to be applied to the discharge of the debts; only so much to be sold as shall be necessary for such purpose, and the balance of all the property, after the discharge of the debts, to be transferred to the party of the first part. Also, "in trust, to conduct and manage said business and property economically, and in a business-like manner; to keep proper and separate books of accounts and vouchers, which shall always be open to inspection by parties interested; to deposit the money arising out of said business or property, not in immediate actual use, in a trustworthy bank of good reputation, and to faithfully discharge the duties of the trusts herein conferred, in the best interests of the creditors and the party of the first part.

"And the parties of the second part hereby accept the trusts herein conferred, and agree to faithfully perform the obligations of said trusts as herein specified."

Upon the execution of said deed of trust, the said trustees engaged in operating said cannery, and continued to operate it during the seasons of 1878, 1879, 1880, and 1881. It appears that they obtained permission of the respondent to operate it during the season of 1879, but they had no permission from him to operate it during the remaining two seasons, unless it were implied. Subsequent to 1881 the said trustees sold the cannery back to the respondent. From these various

sources and transactions, the trustees derived a large amount of funds applicable to the payment and discharge of the said debts.

The respondent alleged, in his complaint in the suit, that he was informed and believed that said trustees had, prior to January, 1882, realized more than sufficient to pay all claims against the estate. He also complained of their having sold certain real property which they were not authorized to sell under the trust deed, and that they were offering to sell other portions thereof, and that they had refused to make him a statement and accounting of the condition of the affairs of the estate, although he informed them that if it should be ascertained upon such accounting that they had not realized sufficient to satisfy all just and legal claims against it, he would advance to them the balance, and receive back the residue of the property unsold. The said trustees filed an answer to the complaint, in which they set forth a statement of their account, also the claims of the creditors, who were also made parties to the suit, upon motion of the counsel for the trustees. The respondent filed a reply, in which he controverted many of the matters alleged in the answer, and the main question presented for the consideration of this court arises out of the issues of fact so formed.

The first issue referred to involved the amount of the indebtedness from the respondent to certain of the creditors at the time the deed of trust was executed. Those creditors, excepting one—the Salem Flouring Mills Company—were parties who had received from the respondent amounts of salmon and beef, either by purchase or on commission—counsel at the hearing did not exactly agree which. The respondent shipped them salmon, and they made advances to him. He was responsible for the proper packing, and they took the risk of sea damage. The salmon not proving good, they made reclamations

upon him, and in most cases he had agreed to allow them. These accounts were between Dickson, De Wolf, & Co., W. & J. Lockett, Henry Coubrough, and Ten Bosch & Co. Dickson, De Wolf, & Co. are E. D. Heatley, or Campbell & Heatley. There is, however, an item as a drawback against the account of W. & J. Lockett, for amount paid by respondent in shipping certain amounts of salmon from Astoria to San Francisco, and placing aboard the cars. The salmon was obtained by the Locketts from the respondent, to be shipped direct by vessel from Astoria to Europe, the former to pay freight, but they subsequently concluded to have it go across the continent by rail, from which circumstance the item of expense accrued. Another of the issues referred to involves the amount of compensation the trustees should be allowed for their management of the estate.

These issues and their collaterals include the main controversy between the parties. The matter of compensation of the trustees is not difficult to adjust, but the claims for reclamations of advances on the salmon are very much complicated. The respondent claims to have put up the salmon properly, but one cargo of them, shipped by the Titan, arrived in Liverpool in a wretched plight. The appellants claim that it was occasioned by bad packing; but after hearing the testimony and proofs respecting it, and observing the great disproportion of spoiled cans between that shipment and others the respondent made, we are convinced that the severe stress of weather the vessel encountered upon her voyage, the effect upon her other cargo, and upon the vessel itself, caused the greater part of the damage to that lot. But the appellants' counsel contend that the respondent cannot now question the correctness of the accounts of said parties for reclamations, for the reason that he assented to all of them, and some of which he agreed especially to

pay; that these accounts, as between said parties, stand upon the same footing of an account stated, and cannot be surcharged or falsified without clear and satisfactory proof of fraud or mistake. But we must take into consideration the circumstances under which these parties were situated. The respondent was on this coast, and the parties with whom he dealt in Europe. He shipped them the salmon under an agreement that he should be chargeable with all blown tins resulting from improper packing. After the salmon left Astoria, the respondent saw nothing more of them, and he must have relied entirely upon the statements of his consignees. He reposed confidence in them, and when they advised him that the salmon had proved bad in consequence of bad packing, he would be likely to treat it as a matter of course, and to acquiesce. He evidently knew nothing at the time of the severity of the voyage, or the extent the cargo had suffered in consequence of rough weather. He did question the correctness of the accounts, and insisted that the trustees should allow none that should be ascertained to be incorrect, and the evidence is very strong that the trustees and creditors agreed to that. I cannot believe that it would be fair to hold that the respondent was bound by any admission he made as to the correctness of those accounts, or promise to pay them he is shown to have made, if, as a matter of fact, the salmon were properly put up.

When the Titan reached Liverpool, it was ascertained that a large proportion of the cans containing the salmon had burst. This result, under ordinary circumstances, would have indicated improper packing; and when the consignees promptly advised the respondent of the miserable condition in which his shipment had arrived, and very emphatically informed him that it had been occasioned by improper canning, he could have done no less

than acknowledge a liability to repay the advances. The consignees did not probably mention to the respondent that the vessel which transported the goods encountered such severe storms and rough sea that she lay for a long time with her lee-rail under water, and straining and creaking fearfully, the sea continually washing over her decks, fore and aft; that the cargo of wheat and flour was wet and spoiled; that the heat, which generated in consequence, was so intense that it was felt through the deck; that it scorched and blackened the wood-work in proximity to it; and that the gas and steam emitted from the hold when the hatches were off were so dense that the vessel, when at the Liverpool dock, was supposed by many to be on fire. These facts were left for the respondent to discover the best way he could, and he only ascertained them long after he executed the deed of trust. It would certainly be unjust to hold that these accounts became, under the circumstances, accounts stated. I think the question whether the salmon were improperly put up, or were damaged by the sea, is an open one, and that the main damage to that shipped aboard the Titan was sea damage, and that no reclamations should be allowed the parties receiving it on account of advances made thereon; and the amounts charged in any of said accounts for such reclamations should not be allowed in favor of such parties.

The trustees should be allowed a reasonable compensation for attending to the matters of the estate; but their pretended employment of Dickson, De Wolf, & Co., who were none other, as appears from the evidence, than the said E. D. Heatley himself, to make the purchases for the cannery of supplies, etc., and to sell and dispose of the proceeds of the cannery, and agreement to pay the commission of $2\frac{1}{2}$ per cent upon all purchases, and $2\frac{1}{2}$ per cent upon all sales, were not claimed by appel-

lants' counsel to have been legal. No such arrangement could be recognized by the law as binding upon the estate. At the same time, the trustees should be allowed such an amount of compensation as would cover all necessary services of that character, and we are of the opinion that the amount allowed by the Circuit Court ought to be sufficient.

The thirty-eighth finding of the referee, which is as follows, we think correct:

" (38.) That in 1878 plaintiff sold and shipped to said Locketts canned salmon at a stipulated price, *c. f. i.;* that subsequently Locketts directed the shipments to be made overland, they paying the extra freight; that there were so shipped 8,750 cases; that they credited plaintiff £47 6s. 9¾d. too much on ocean freight to Europe, but omitted to credit plaintiff £300 6s. 10d. paid by him in shipping the salmon from Astoria to San Francisco, and placing the same aboard the cars; that plaintiff is entitled in said account of W. & J. Lockett to a credit of £268."

The respondent's counsel contended upon the argument that the deed of trust is only a mortgage, and that consequently the respondent was not chargeable with interest. Whether interest could or not be charged in case the transaction were only a mortgage, we express no opinion; but to refuse to allow interest upon the claims in favor of the said creditors, would be very inequitable, to say the least. It may be difficult to say wherein the transaction differs from a mortgage, yet it is certainly not one. Mr. Pomeroy, in his work on equity jurisprudence, attempts to point out the distinction in such cases, and we content ourselves upon that point by referring to section 995 of that work.

The question raised by the appellants' counsel upon the argument, as to whether the appellants should have

been required to pay any part of the costs of the litigation, and whether it should not all have been imposed upon the respondent, is entitled to a good deal of consideration. I would not be willing to hold that he should pay for the services of the appellants' counsel beyond that which is taxable as costs. But it seems to me that he ought to be required to pay all statutory costs of the case. Had the respondent tendered or made a written offer to pay a sum equal to the balance still due the said creditors, I should have viewed the question differently. I can see no alternative but that the case will have to go back in order to ascertain the amount included in the accounts of said creditors for reclamation of advances made upon the salmon shipped aboard the vessel Titan. The said creditors are entitled to no such reclamations; but as the case stands now, it is impossible to ascertain that fact. When it shall be known, the overcharge in each of the accounts of said creditors can be deducted, and a decree entered accordingly. It may be a fact that when such respective amounts are ascertained and deducted, there will be nothing due upon the accounts of said W. & J. Lockett, Henry Coubrough, and N. Ten Bosch & Co.; but I do not see how that can be found out until there are some *data* showing what portion of each of their claims was for reclamations upon salmon shipped upon the Titan. Reclamations upon salmon shipped upon the other ships are not affected.

The decree to be entered in the Circuit Court, when the fact referred to is ascertained, will be in accordance with the decree appealed from, except so far as modified by this opinion.