## CHARLES F. HARRINGTON v. THE CITY OF PORT HURON.

*Ejectment—Maintenance of sewer.*

Ejectment will not lie in this State for anything that is not tangible or capable of being delivered to the plaintiff by the sheriff under the writ of possession, nor for a mere trespass, right of way, or easement.

So *held*, where a city constructed a sewer through land owned by the government without its consent, and, to protect the end at which sewerage was discharged into the river upon which the land fronted, erected a structure of masonry extending from the bank into the stream, and protected by a system of piling, which structure prevented the land being used for dockage purposes, for which it was valuable. The land was afterwards sold and patented, and a grantee of the patentee brought an action of ejectment against the city to recover the possession of the land, which was described by metes and bounds in his declaration. No other possession or claim of ownership by the city was shown upon the trial than as above stated. And in reversing a judgment in favor of the plaintiff the Court hold:

*a*—That upon the construction of the sewer it immediately belonged to the owner of the soil, and when the government conveyed the land the whole of the premises passed to its grantee.

*b*—That a writ of possession, under the judgment, would only put the plaintiff in possession of the land, which he could have had at any time without the aid of the court, and which land would be still incumbered by the sewer, through which the water would continue to be discharged.

*c*—That, if the city had obtained the right to construct the sewer across the land to discharge the water passing therein, it would have created an easement upon the land; and if it constructed it without authority, thus discharging the water upon and across the land, the act would be a trespass, but not an ouster of the plaintiff from the land.

*d*—That the plaintiff's title, as riparian owner, extends to the boundary line in the river, and gives him the right to erect docks and employ the land for any purpose not inconsistent with the rights of navigation; and if the city is in possession,

and sets up a claim of right to maintain the sewer in the river in front of the land, and to drive and maintain the piles there for its protection, ejectment will lie for the land so appropriated.

*e*—That the mere fact that the sewer has been used continuously to discharge water into the river, without any other acts or claims by the city, would not amount in law to keeping the plaintiff out of the possession of the premises.

Error to St. Clair. (Canfield, J.)    Argued April 23, 1891.    Decided May 8, 1891.

Ejectment. Defendant brings error. Reversed. The facts are stated in the opinion.

*Frank T. Wolcott,* for appellant.

*A. E. Chadwick,* of counsel, for appellant, contended:

1. The second count is wholly insufficient to admit of any evidence, or as the foundation of any judgment; citing How. Stat. § 7795; *Twogood v. Hoyt,* 42 Mich. 609; *White v. Hapeman,* 43 Id. 267.

2. A corporation cannot maintain ejectment for a mere easement; citing *Grand Rapids v. Whittlesey,* 33 Mich. 109; *Bay County v. Bradley,* 39 Id. 163; *Taylor v. Gladwin,* 40 Id. 232; and, as a necessary corollary, it follows that if a municipal corporation cannot maintain ejectment for an easement because having no right or title to its exclusive possession, or of the land subject to it, the same reasons prohibit a like action against it.

3. The plaintiff is the undisputed legal owner and in possession of the whole tract of land so far as it is capable of possession, or as he chooses to exercise it; citing How. Stat. § 8701; and he cannot maintain ejectment; citing *Rea v. Rea,* 63 Mich. 257, 262; and if he seeks to recover a part only, he must describe the part from which he is ejected and excluded with certainty; citing *White v. Hapeman,* 43 Mich. 267; *King v. Merritt,* 67 Id. 195, 210.

*Avery Bros.,* for plaintiff, contended:

1. How. Stat. § 7791, authorizes ejectment against any "person exercising acts of ownership on the premises claimed, or claiming title thereto, or some interest therein."

2. The city claimed the right to use this land as a street, and, acting under that claim, erected this brick and stone structure,

and has continued to maintain it, which acts of ouster are much more pronounced than those of the defendant in *Cole v. Wells*, 49 Mich. 450, where Wells strung a boom-pole along the front of Cole's premises, fastening it to piles before driven, and continued to maintain the boom as a storage for logs, and ejectment was held a proper remedy.

3. One who records an invalid tax title can be made defendant in ejectment, even though he has taken no steps to assert possession; citing *Heinmiller v. Hatheway*, 60 Mich. 391; *Anderson v. Courtright*, 47 Id. 161; *Hoyt v. Southard*, 58 Id. 434.

4. On the principle that the owner of the fee owns all above and below the surface, ejectment has been sustained for space above land covered by an overhanging roof; citing Tyler, Eject. 37; *Aiken v. Benedict*, 39 Barb. 400; *Hoffman v. Armstrong*, 48 N. Y. 201; *McCourt v. Eckstein*, 22 Wis. 155; and for a coal mine; citing Tyler, Eject. 41; Adams, Eject. 20; *Caldwell v. Fulton*, 31 Penn. St. 475 (72 Am. Dec. 760); and it lies in favor of the owner against one in possession and exercising acts in the nature of an easement, as where a railroad company laid its track over one's land; citing *Carpenter v. Railroad Co.*, 24 N. Y. 656; and where a city claimed the right to swing a bridge crossing a canal over the lands of plaintiff; citing *Lawe v. City of Kaukauna*, 70 Wis. 306; and the contention that mere prevention of beneficial use of the premises by the defendant is not enough to warrant ejectment is admirably answered by the reasoning in *Booming Co. v. Jarvis*, 30 Mich. 320.

CHAMPLIN, C. J. The plaintiff brought an action of ejectment against defendant by filing a declaration as commencement of suit, which contains two counts. The first count described the premises as follows:

"A tract of land bounded on the north-west by Pine Grove park, on the north-east by St. Clair river, and on the south by Lincoln avenue, excepting a strip of land across said premises seventy-five feet in width, occupied by the Port Huron & Northwestern Railway Company, being fifty feet in width on westerly side of the center line of the roadway of said company, and twenty-five feet on the easterly side thereof," which premises the plaintiff claimed in fee.

The second count describes the premises as follows:

"All that part of that piece of land bounded on the

north-west by Pine Grove park, on the north-east by St.
Clair river, and on the south by Lincoln avenue, which
is occupied by Superior-street sewer and Ontario-street
sewer, and the outlet thereof;" and then the same excep-
tion as in the first count,—which premises the plaintiff
claimed in fee.

A trial was had before a jury, and it appeared that
this land described in the first count of plaintiff's decla-
ration was formerly a part of the Ft. Gratiot military
reservation; that on the 20th day of July, 1868, the Con-
gress of the United States authorized the Secretary of
War to sell portions of this reservation, including the
tract in controversy, "at such times as he may deem
most advantageous to the interests of the government."
On March 18, 1870, before any sales had been made by
the Secretary, a portion of the tract was granted to the
city of Port Huron for park purposes, to be known as
"Pine Grove Park." Some time during the season of
1870 the Secretary of War caused the remaining portion
of the reservation to be platted, and public sale was
made of a part thereof. The part unsold, which is in
controversy here, was sold under authority of an act of
Congress passed June 16, 1880, to the Port Huron &
Northwestern Railway Company, and this company con-
veyed to the plaintiff in this suit such land by deed
dated April 3, 1884. In this deed there was an erroneous
description, which was corrected by a deed dated January
8, 1886.

In June, 1874, the city of Port Huron, by its common
council, decided to construct a sewer from the St. Clair
river westward, through and along Park place, to Ontario
street, and during that year entered upon the premises
and constructed the sewer. The authorities of the United
States had prepared a map previously to that time, on
which was designated a street across the land described

86 MICH—4.

in the declaration, known as "Park Place;" but before
the same was recorded or the property sold the author-
ities of the United States had ignored such street, and
retained the premises as property belonging to the gov-
ernment.  In 1875 or 1876 the city caused a sewer to be
built along Superior street, which connected with the
one through Park place.  These sewers have always been
maintained by the city as public sewers, and continue so
to be.  They are used by the inhabitants of the city for
sewage purposes, and, among other, others, by the plaintiff in
this suit, who was, as appears, one of the petitioners for
the construction of the sewer in Superior street, which
was built before he obtained title from the railway com-
pany.  It further appears that at the outlet of the sewer,
at its junction with the river, there is a structure of
masonry several feet in height and 22 feet in width,
extending outward from the bank into the stream,
protected by a system of piling; and testimony was intro-
duced tending to show that this structure prevents the
land being used for any purposes requiring dockage, and
that the land is so situated as to be valuable for a dock
frontage.  It was further shown upon the trial that the
premises are uninclosed, and that there is nothing to
prevent the plaintiff from taking possession peaceably of
the land described in his declaration.  The sewer in ques-
tion was built several years before the railway company
made its purchase in 1880, and while the land belonged
to the general government; and some effort was made on
the part of the defendant to show that permission was
given the city by the officer in charge of Ft. Gratiot for
it to construct the sewer across these premises, but we
think that such testimony wholly failed to show such
permission.  On the contrary, it was shown that, during
the time they were excavating for the sewer, the officers

in charge of the fort caused stakes to be set along the lines of this parcel of land to indicate that it belonged to the government.

It is a principle of law that where a person, without permission from the owner, knowingly enters upon his lands, and erects structures permanent in their character, annexed to the freehold, such structures belong to the owner of the soil to which they are annexed or upon which they are erected; and it follows that when the city erected this sewer across the lands of the government of the United States, without its consent or permission, such structure immediately belonged to the owner of the soil, and when the government conveyed such land to the railway company the whole of the premises passed to its grantee.

The testimony does not show that the city is in possession of any of the premises described in plaintiff's declaration, or that it assumes to exercise any act of control or ownership over it; the facts appearing that in 1874 it constructed a sewer across it, which is the outlet of two sewers, and has done nothing since upon the lands. But if the city did claim to own the sewer, and to have the right to discharge water through it, we do not think that the action of ejectment would lie, under the circumstances of this case. Ejectment will not lie in this State for anything that is not tangible or capable of being delivered to the plaintiff by the sheriff under the writ of possession. Here the judgment was rendered upon the verdict of the jury for the premises described in the first count of the plaintiff's declaration, such verdict having been directed by the trial court. A writ of possession, under such judgment, would only put the plaintiff in possession of what he could at any time have had without the aid of the court, and, when he was so put in possession of the land described in the first count

of his declaration, the sewer would still incumber the land, and the water continue to be discharged through this artificial conduit. Ejectment will not lie for a mere trespass to lands, nor for a mere right of way or an easement. *Turnpike Co. v. Smith,* 15 Barb. 355; *Judd v. Leonard,* 1 D. Chip. 204; *Clement v. Youngman,* 40 Penn. St. 341; *Caldwell v. Fulton,* 31 Id. 483; *Child v. Chappell,* 9 N. Y. 251.

If the corporation had obtained the right to construct the sewer across these lands to discharge the water passing therein, it would have created an easement upon the land. If the city constructed the sewer without authority, thus discharging the water upon and across the land, the act would be a trespass, but not an ouster of the plaintiff from the lands described. Expressed in simplest language, the city has constructed an artificial aqueduct across the lands belonging to plaintiff's grantor, through which it discharges water and sewage from two of the sewers laid in the streets of the city. There is no doubt that the plaintiff's title, as riparian owner, extends to the boundary line in the St. Clair river, and gives him the right to erect docks and employ the land for any purpose not inconsistent with the rights of navigation; and if the defendant in this case is in possession, and sets up a claim of right to maintain the sewer in the St. Clair river in front of his land, and to drive and maintain piles there for the purpose of protecting such sewer, we think ejectment would lie for the land so appropriated; but the facts in this case do not warrant this Court in finding that the city of Port Huron has laid any claim to the right to maintain the structure which it erected when it built the sewer, and we are of opinion that the court erred in directing a verdict for plaintiff under the first count of plaintiff's declaration.

The learned judge instructed the jury that—

"The act of the city in entering upon, the excavating the soil for this sewer, and constructing the same, was such an act as amounted to an assertion or claim of title on its part, and so the owner of the property may treat it as an act of disseisin or ouster; and, as the sewer has been used and maintained continuously to the present time, I think it a legal fact that plaintiff has been kept out of possession of the premises by the city."

We have already called attention to the fact that this sewer was constructed long before the plaintiff obtained his title from the railway company, and in fact before the railway company had obtained its title to the land in dispute, and if there was any ouster of the owner, or an act of disseisin, it occurred a long time prior to the conveyance to plaintiff's grantor. The government, in conveying to plaintiff's grantor, only conveyed all the right, title, and interest of the United States to the land in question, without any covenants of warranty whatever.

We shall not assume in this suit, at this time, to pass upon the question as to whether or not it was the intention of the government to recognize defendant's rights upon the premises; although it may be said that the government granted to the purchaser the full extent of its right, title, and interest in the premises. It is apparent, however, that whether the act of the city in constructing the sewer was a disseisin of the owner would depend very much upon the facts and circumstances under which the city entered upon the land and constructed the sewer. If at that time the city authorities supposed that there was a public street called "Park Place," in which they were constructing a sewer, it would not be such an assertion or claim of title on its part as would operate as a disseisin if it afterwards turned out that the city was mistaken as to the claim under which it entered. Neither would it be a disseisin if the city entered by the consent, express or implied, of the owner. The mere fact that

the sewer has been used continuously to the present time to discharge water into the St. Clair river, without any other acts or claims made by the defendant, would not amount in law to keeping the plaintiff out of possession of the premises.

We think that the plaintiff has mistaken his remedy, and that the judgment must be reversed, and a new trial granted.

McGRATH, LONG, and GRANT, JJ., concurred with CHAMPLIN, C. J.

MORSE, J. *(dissenting)*. This judgment should be affirmed. The title of the premises in issue is indisputably in the plaintiff, and he is not in possession. The city of Port Huron is maintaining continuously from day to day and hour to hour a sewer upon his premises. The mouth of the sewer, where it empties into the St. Clair river, is constructed of stone, and protected by piles, constituting an obstruction to the erection of a dock, elevator, or building, and depriving plaintiff of all beneficial use of his water front. He has frequently applied to the municipal authorities in relation to this sewer, claiming it to be an obstruction to the exercise of his property rights in the land, and notified them that he was the owner of the premises; but they have always denied his title, and insisted on their right to maintain this sewer. It is true, under the authorities, that ejectment cannot be maintained for a mere trespass upon land, nor for a mere right of way or an easement; but that is not this case. This occupation of the city for the purposes of sewerage is not a mere temporary trespass, like one going onto the premises of another and doing damage and going away again, but it is a continuing trespass,—one that never ceases. The sewer remains there all the time, and is in use by the city

night and day.  It amounts substantially to a constant
occupation of the plaintiff's premises, and a possession
which is sufficient to justify the remedy of ejectment.

Ejectment, under our statute, will lie against any—

" Person exercising acts of ownership on the premises
claimed, or claiming title thereto, or some interest
therein." How. Stat. § 7791.

In *Cole v. Wells,* 49 Mich. 450, the defendant fastened
a boom-pole to piles driven in the Black river in front
of plaintiff's land, and used the boom for the storage of
logs, claiming the right to do so.  It was held that
ejectment could be maintained.  There was nothing in
that case to prevent the plaintiff from tearing away and
removing this boom from his premises.  He could have
destroyed it, as he can destroy this sewer; but the law,
in my opinion, does not force the plaintiff to destroy
property to remove such an obstruction, or to get, as he
probably would, into a war or conflict over the possession
of the premises so occupied by another, in which conflict
the superior force would prevail.  He is entitled to the
peaceful remedy of ejectment.  Nor is he even compelled
to resort to the inadequate and vexatious remedy of
trespass,—a remedy which, in case of judgment in his
favor, settles nothing as to his title to the land.  *Keyser
v. Sutherland,* 59 Mich. 455.

But it is said that there has been and is nothing in
the way of his taking peaceful possession of the land.
But this is no valid reason why he cannot bring eject-
ment under our statute.  We have held repeatedly that
the putting on the record of a tax deed to premises, and
claiming title thereunder, would warrant an action of
ejectment by the owner of the land out of possession
against the holder of such tax title.  *Heinmiller v. Hathe-
way,* 60 Mich. 391; *Anderson v. Courtright,* 47 Id. 161;
*Hoyt v. Southard,* 58 Id. 434.  Yet in such case there

would be nothing to prevent the owner obtaining peaceable possession of the premises in most cases, but it has never been claimed that the fact that such possession could be taken had anything to do with the right to bring ejectment. Possession in the defendant is not a necessary element in ejectment in this State. The remedy is aimed against the assertion of ownership of or an interest in the land as well as against an unlawful possession.

Nor are the cases cited by the Chief Justice in relation to easements or rights of way applicable here. The plaintiff is not bringing ejectment to recover a right of way or an easement, but to free his land of an unauthorized occupation under a claim of right by the city so to occupy it. As before shown, he is not obliged to invite trouble and conflict in an attempt to free his premises by removing the piles and tearing out the sewer. The action of trespass would not settle his title. He is not obliged to forbear his remedy in ejectment—the only proper action to declare and fix his title permanently— because the premises are not guarded against his peaceable entry upon them.

In 24 N. Y. 656 (*Carpenter v. Railroad Co.*), ejectment was brought against the defendant, and upheld, a majority of the court holding that the occupation was such that the action would lie. It was shown that the railroad company had laid a track and affixed it to the soil, but had never used it or connected it with its operating road. It justified the laying of the track under permission of the municipal authorities, claiming the ground to be a public street, and also raised the point that ejectment would not lie because of the character of its occupancy. The court held that the fee of the soil, if it was a street, was in the plaintiff, and he had a right of action against any person using it for any other than legitimate street

purposes, and that the defendant had sufficient occupancy to justify bringing ejectment. The court said:

"Ejectment will lie for anything attached to the soil of which the sheriff can deliver the possession."

But it is said that a writ of possession under a judgment in favor of the plaintiff will only put him in possession of what he could at any time have had without the aid of the court, and that the sewer would still incumber the land. So, also, a writ in the case of *Hoyt v. Southard*, 58 Mich. 434, would only have given the plaintiff, as far as the possession was concerned, what he could also have taken without suit. But something more is accomplished by the writ in both cases than the mere delivery of the possession. The possession is delivered symbolically, but with it goes the establishment of plaintiff's title, freed from the adverse claim of title by the defendant. In the case at bar, also, the sewer with its stonework and piles is delivered to the plaintiff as his own, to do with them as he sees fit, without fear of further litigation, or any other conflict. In no other way except by an action of ejectment can the plaintiff determine and adjudicate at law his title to this land, unless he shall do something which will authorize the city to bring ejectment against him; and it is very doubtful if he could do any act which would authorize the city to maintain ejectment against him, under the authorities.