TITLE GUARANTEE & TRUST CO. v. NORTHERN COUNTIES INVEST-
MENT TRUST, Limited, et al.

(Circuit Court, D. Oregon. April 28. 1896.)

TRUSTS—CREATION—LEGAL TITLE.

> One M. entered into an agreement with the T. G. & Trust Company, whereby he sold and conveyed to the trust company two parcels of land, on one of which was a theater. The parcel on which the theater stood was subject, with other land, to a mortgage to a third party, which had been negotiated by the trust company. By an agreement of trust, simultaneously made, a trust was created in the trust company in the theater, and the land on which it stood, in favor of the trust company, to manage the theater, collect the rents and profits, pay the expenses of management, and for the services of the trustee, and to repay advances to M. and certain claims against him. After such payments and the payment of the mortgage, the property was to be reconveyed to M. M. retained his box and an office in the theater, and also the management of the other parcel of land, the latter for the purposes of the trust. *Held,* that these agreements did not create a mere mortgage, but vested the legal title to both parcels of land in the trust company, and that M.'s equitable interest was not subject to levy and sale on execution, though the box and office reserved by him might be so sold.

W. D. Fenton, for plaintiff.
Zera Snow, for defendants.

BELLINGER, District Judge. This is a suit by the Title Guarantee & Trust Company to enjoin the Northern Counties Investment Trust, Limited, and H. C. Grady, marshal, from selling certain property under execution issued on a judgment against P. A. Marquam and wife. On November 13, 1894, Marquam and wife entered into an agreement with the Title Guarantee & Trust Company, whereby the former sold and conveyed to the latter all of block 178, upon which is situated the Marquam Theater, known in the case as the first tract, and lots 1, 2, 3, and 4, in block 120, known as the second tract. The conveyance was subject to a mortgage in favor of the United States Mortgage Company upon the first tract, and 80 acres of outside land, for $300,000, which mortgage was to secure a debt negotiated for Marquam by the Title Guarantee & Trust Company. An agreement of trust was entered into on the same date, to which there was subsequently added a supplemental agreement, by which a trust was created in the guarantee company in the theater property and land, and the four lots in block 120, in favor of that company, to manage the theater property, collect the rents and profits therefrom, pay the expenses of such management and operation, and for the services of the trustee, in connection with the trust, to

repay advances that might be made to Marquam, with interest, to pay, pro rata, certain claims against Marquam. After these payments have been made, and the $300,000 and interest paid, it is provided that the property covered by the deed of trust shall be reconveyed to Marquam. Marquam retained his box in the theater and an office in the building, and he retained the management of lots 1, 2, 3, and 4, for the purposes, however, of the trust. The defendants claim that these conveyances and agreements constitute a mortgage in favor of the guarantee company, and that the legal title remaining in Marquam is subject to levy and sale under an execution levied by it. The suit is brought to enjoin such sale. It is further claimed that if the legal title to the property has passed, there remains in Marquam an equitable interest or estate, and that this is subject to sale on execution.

It is my opinion that these facts vest the legal title to all the property in question in the Title Guarantee Company, and that the right or interest remaining in Marquam is not the subject of levy and sale under an execution issued upon a judgment in an action at law. The agreement of the parties constituted the company the trustee of the parties, charged with the management of a part of it, and with duties and responsibilities to all of it. Moreover, the trustee acquired an interest in the property to the extent of certain commissions for services in procuring the loan of $300,000, and for such proper charges and expenses as are incurred by the trust.

The extent of Marquam's interest, for the purposes of sale on the execution levied, cannot be determined. It cannot on such sale be defined, nor its marketable value estimated. It is a matter of the merest speculation, so that a sale would probably result in its sacrifice. Moreover, the proposed sale is of all this property, as the only means of disposing of Marquam's interest in it, whatever that interest may be, and the effect of such a sale will be to obstruct the trust, and embarrass the title of the property in the hands of the trustee, to the injury of creditors whose debts are secured by it.

The defendant company has the right to subject Marquam's interest in this property to the payment of its debt, but not by a reckless and destructive procedure. Every consideration of equity requires that the interest to be sold shall be first ascertained by a proper proceeding in a court of chancery. This is necessary to any sale of it with the reasonable expectation of realizing its market value. And the case, as to the second parcel of property, is in no wise altered by the fact that Marquam is allowed to manage it. There is but one trust, and it includes this property, as well as the other. The management of the property does not enlarge Marquam's interest in it, nor aid in determining the extent of such interest, nor in any way overcome the difficulties in the way of its proposed sale on execution.

It is argued that the theater box and office reserved to Marquam's use in the trust agreement is property subject to be sold on this execution. I see no objection to such a sale, and, if the plaintiff in the execution wishes to sell the right so reserved, it may do so, by a precise description of the right sold, leaving open the question

as to whether its standing in equity to reach and subject Marquam's other interest in the property to the payment of its debt will be affected by such a sale.

The demurrer to the bill is overruled, and the motion to discharge the rule to show cause is denied.