Decided August 2, 1897.

## LADD *v.* JOHNSON.

[49 Pac. 756.]

</div>

1. CONVEYANCE TO TRUSTEE—MORTGAGE.— A declaration of trust executed by a solvent person contemporaneously with an absolute deed reciting that the maker, being in a state of mortal illness, and desiring to provide for the payment of his debts, had conveyed his real estate to plaintiff, in trust to pay his debts, with the desire to avoid proceedings in the courts; it being declared that the deed was a conveyance in trust, with full power to sell, the balance, after payment of debts, to be returned to the maker, his heirs, executors, or assigns, does not affect the absolute title conveyed by the deed—the two instruments do not together constitute a mortgage: *Thompson* v. *Marshall*, 21 Or. 181 distinguished.

2. PREFERENCE BY SOLVENT DEBTOR.— Hill's Ann. Laws, § 3173, declaring that no general assignment by an insolvent, or in contemplation of insolvency, shall be valid, unless made for the benefit of all creditors, does not apply to a conveyance by a solvent debtor of part of his property to prefer particular creditors, if executed in good faith: *Inman* v. *Sprague*, 30 Or. 321; *Sabin* v. *Wilkins*, 31 Or. 450, applied.

From Multnomah:   LOYAL B. STEARNS, Judge.

This is a suit for the purpose of reforming a certain deed and instrument in writing, executed by A. H. Johnson to W. M. Ladd, by correcting a mistake in the description of the property intended to be included therein, and of restraining the sale of attached property in an action by the defendant

White against Johnson. The complaint, after alleging the death of Johnson, on April 16, 1894, the probate of his will, the appointment of the defendant Cordelia Johnson as executrix, and setting forth the names and ages of his heirs, avers, in substance, that on January 25, 1894, Johnson and wife conveyed, by warranty deed, to the plaintiff, Ladd, a large amount of real property in the City of Portland, for the purpose and upon the terms and conditions set forth in an instrument in writing executed contemporaneously therewith, and as a part of the same transaction, which is in words and figures substantially as follows: "Whereas, A. H. Johnson, of Portland, Oregon, is indebted to various creditors in the sum of $240,000.00, more or less, of which indebtedness the sum of $180,000.00, more or less, is due to Ladd & Tilton, bankers, of Portland, Oregon; and whereas, the said A. H. Johnson is in a state of mortal illness, and desires, as far as possible, to make provision for the payment of said indebtedness out of his assets, and to that end has especially requested William M. Ladd, of the firm of Ladd & Tilton, to act as his trustee in said behalf, and has, by deed executed the twenty-fifth day of January, 1894, and bearing said date, conveyed to said William M. Ladd the following described real estate situate in the County of Multnomah, State of Oregon, towit: [Then follows a description of the real estate referred to and described in the deed of conveyance from Johnson and wife to Ladd]; and whereas, to the end aforesaid, the said A. H. Johnson has also, by a certain instrument,

executed on said twenty-fifth day of January, 1894, and bearing said date, conveyed to said William M. Ladd 270 shares of the capital stock in the Union Meat Company, a corporation of the State of Oregon: Now, therefore, this declaration of trust witnesseth: That the said William M. Ladd is fully empowered in all things to manage, incumber, sell, and dispose of said property, or any portion thereof, according to his best and sole judgment, as fully and freely as if he were the owner thereof, upon the trust only that he shall apply the net proceeds of said sales and incumbrances to the reduction of the lawful indebtedness against said A. H. Johnson, and with power to sell and convey to any creditor, including said Ladd & Tilton, such portions of said property as he may see fit to convey, in liquidation of such creditor's debt, including the debt to Ladd & Tilton, or any portion thereof, as he may see fit. The conveyances have been made, and this declaration of trust is made and delivered to said William M. Ladd, in full confidence in his ability and integrity, and with the express desire to avoid proceedings, by foreclosure or otherwise, in the courts; and it is expressly intended, not as a mortgage, but as a conveyance in trust, with full power to sell and incumber, and with as full power to sell and incumber to the firm of Ladd & Tilton, of which said trustee is a member, as to any other person whatever. And it is expressly understood that any person who may purchase the aforesaid property, or any part thereof, from said William M. Ladd, having knowledge or notice of this trust, shall not

be required to see to the application of the proceeds of such sales; and it is further expressly understood that the acceptance of this trust by the said William M. Ladd shall in no respect prejudice the firm of Ladd & Tilton in respect to any claims of any nature whatever, or any rights and remedies at law or in equity by reason thereof. The overplus or residue of said property or the proceeds thereof, after all the just debts of said A. H. Johnson shall have been paid, shall be reconveyed or returned to said A. H. Johnson, his heirs, executors, or assigns, the customary or usual compensation to be allowed said trustee for his services performed herein. In witness whereof, the said A. H. Johnson and Cordelia Johnson, his wife, have hereunto set their hands and seals, this twenty-fifth day of January, 1894."—Signed by Johnson and wife and Ladd, and properly witnessed and acknowledged. The complaint further alleges that Johnson was solvent at the time of the execution of the deed and agreement, although largely indebted to Ladd & Tilton and other persons, which indebtedness is still unpaid, and that said deed covered only a portion of his property. Then follow appropriate allegations of the mistake in the description of a portion of the property intended to be conveyed, and of the attachment thereof prior to Johnson's death, in an action brought against him by the defendant White. A demurrer to the complaint having been sustained, and the bill dismissed, the plaintiff appeals.

REVERSED.

For appellant there was a brief over the name of *Williams, Wood & Linthicum,* with an oral argument by *Messrs. Geo. H. Williams* and *Stewart Brian Linthicum.*

For respondent White there was a brief over the name of *Cox, Cotton, Teal & Minor,* with an oral argument by *Mr. Wirt Minor.*

For all other respondents, except Wilcox, there was an oral argument by *Mr. Richard Williams.*

MR. JUSTICE BEAN, after making the foregoing statement, delivered the opinion of the court.

1.  In support of the ruling of the court below it is claimed, in the first place, that the deed and agreement set out in the complaint created a mortgage to secure Johnson's indebtedness to Ladd & Tilton and his other creditors, enforceable only in equity, and that the legal title to the property covered thereby remained in Johnson, subject to attachment. But we cannot agree with this contention. It is clear from the declaration of trust accompanying the conveyance that the transaction was intended by the parties as an unconditional conveyance to the plaintiff for the purpose of raising a fund to pay the grantor's debts then existing, between which and a mortgage or deed of trust in the nature of a mortgage there is a well-recognized distinction. In the one case the grantor parts absolutely with his title, and it vests in the grantee for the purposes of the trust. In the other the convey-

ance is conditional and subject to be defeated by performance on the part of the grantor. A mortgage or deed of trust in the nature of a mortgage is intended as security for the payment of money, or for the performance of some collateral act, and becomes void upon such payment or performance, (*Wing* v. *Cooper*, 37 Vt. 179; *Mitchell* v. *Burnham*, 44 Me. 299; *Harrington* v. *City of Port Huron*, 86 Mich. 46 [13 L. R. A. 664, 48 N. W. 641]; *Newman* v. *Samuels*, 17 Iowa, 528); while a deed of trust of the character under consideration here is an absolute and indefeasible conveyance of the whole of the grantor's title, for the purpose expressed. The former, whatever the form of the instrument, or whatever name may be given it by the parties, creates a mere lien, while the latter conveys title. It is manifest from this distinction that the conveyance in controversy in this suit is not a mortgage or deed of trust in the nature of a mortgage, but an absolute conveyance of the legal title of the property in controversy to the plaintiff. It was not made as security for Johnson's debts, or for the performance of any other act by him. The intention of the parties, apparent upon the face of the instruments, was to vest the title absolutely in the grantee for the purposes of the trust. It was never contemplated that anything more than the surplus remaining after the payment of Johnson's debts should be returned to him. The deed is in the usual form, and, standing alone, certainly operates to convey title; and there is nothing in the declaration of trust to show the contrary. There is no statement

that it was intended as a security for Johnson's debts, nor is there anything from which such an intention can be inferred. There is no contingency upon the happening of which the instrument shall be void or inoperative. There is no right of redemption remaining in Johnson. Indeed, it has none of the incidents and characteristics of a mortgage or instrument given as security. On the other hand, it is expressly declared that the deed was not intended as a mortgage, but as a conveyance in trust, with full power to convey and incumber; and while this expression, standing alone, might not be sufficient to give character to the transaction, yet it is entitled to great weight in determining what it really was. Moreover, it appears that, at the time of the conveyance and agreement, Johnson was in a state of mortal illness, of which he shortly thereafter died; that he desired to make provision for the payment of his debts, so as to avoid the delay and expense incident to administrative proceedings, and, to that end, chose to convey a portion of his property to the plaintiff to be converted into money for that purpose; and we know of no rule of law which will prohibit the carrying out of his intention so clearly and definitely expressed in the instruments evidencing the transaction.

It is claimed that the case of *Thompson* v. *Marshall*, 21 Or. 171 (27 Pac. 957), is antagonistic to this view; but it will be observed that it appeared in that case, either from the instruments themselves or from the averments of the complaint, that the

transactions were expressly intended and designed
as mortgages to secure the payment of money, and
had attached to them all the incidents of redemp-
tion and right of foreclosure; and the only question
before the court, or considered by it, was whether
a power of sale contained in a mortgage was valid
in this state. The court did not undertake to hold
that the owner of property could not convey it ab-
solutely to a trustee for the purpose of raising a
fund with which to pay his debts, or that such a
trust could not be enforced without the aid of a
court of equity. The distinction between such an
instrument and a mortgage or deed of trust de-
signed as security for a debt is everywhere recog-
nized, and is pointed out with clearness in the fol-
lowing authorities: 2 Pomeroy's Equity Jurispru-
dence, § 995; *Kinney* v. *Heatley*, 13 Or. 45 (7 Pac.
359); *Flagg* v. *Walker*, 113 U. S. 659 (5 Sup. Ct.
697); *Hoffman* v. *Mackall*, 5 Ohio St. 124 (64 Am.
Dec. 637); *Woodruff* v. *Robb*, 19 Ohio, 212; *Turner*
v. *Watkins*, 31 Ark. 429; *Soutter* v. *Miller*, 15 Fla.
625; *Title Guarantee Company* v. *Northern Counties
Trust*, 73 Fed. 931; *Catlett* v. *Starr*, 70 Tex. 485
(7 S. W. 844); *Newman* v. *Samuels*, 17 Iowa, 528;
*McDonald* v. *Kellogg*, 30 Kan. 170 (2 Pac. 507).

2. It is further claimed that the transaction be-
tween Johnson and the plaintiff is, in legal effect, a
voluntary assignment for the benefit of creditors,
and void, under section 3173, Hill's Ann. Laws, be-
cause it is partial, and creates a preference in favor
of certain creditors. The section referred to pro-
vides that "no general assignment of property by

an insolvent, or in contemplation of insolvency, shall be valid unless it be made for the benefit of all the creditors in proportion to the amount of their respective claims." The operation of this section is limited to general assignments, and was designed to cut up by the roots the common law doctrine that a debtor could lawfully make an assignment with preferences in favor of certain creditors. But it does not prohibit him from preferring one creditor to another, or from making a partial assignment for the benefit of creditors, unless it is done in contemplation of and as part of a general assignment. And the conveyance or assignment in question here does not come within its provisions, because it was neither a general assignment, nor made by an insolvent or in contemplation of insolvency. The complaint avers, and the demurrer in effect admits, that Johnson was wholly solvent at the time, and that the deed and agreement were intended to transfer and cover only a portion of his property. Hence it cannot be said that such a transaction comes within the provisions of the section quoted. Its provisions are confined to general assignments for the benefit of creditors, made by an insolvent debtor or in contemplation of insolvency, and does not affect the common law right of a debtor to prefer one creditor to another, if done in good faith: *Inman* v. *Sprague*, 30 Or. 321 (47 Pac. 826); *Sabin* v. *Wilkins*, 31 Or. 450 (37 L. R. A. 465, 48 Pac. 427); *Loomis* v. *Stewart*, 75 Iowa, 389 (39 N. W. 660); *Campbell* v. *Colorado Iron Company*, 9 Colo. 60 (10 Pac. 251).

It follows that the decree of the court below must be reversed and a decree rendered here reforming the deed and agreement set out in the complaint, as prayed for, and declaring the plaintiff to be the legal owner of the property therein described, with the right and power to dispose of the same according to the terms of his trust.

<div align="right">REVERSED.</div>

<div align="center">Decided February 3, 1898.</div>