Argued February 23, decided April 6, 1909.

## KOLLOCK *v.* BENNETT.

[100 Pac. 940.]

Trusts — Validity of Oral Trusts — Trusts in Proceeds of Sales of Land.

1. The objection that under Section 797, B. & C. Comp., a trust in real estate cannot be established by parol, is not available, where grantee has platted and sold part of the real estate under a parol agreement to convert it into money, apply the proceeds on an indebtedness, and account to his grantors for any sum remaining.

MORTGAGES — MORTGAGE DISTINGUISHED FROM OTHER TRANSACTIONS — TRUSTS.

2. A grantee, under an agreement to sell the property, apply the proceeds on an indebtedness, and account to grantors for the balance, is not a mortgagee, but a holder of the legal title, and liable only to account as trustee for the proceeds of sales when made, and entitled to maintain a suit in his own name with reference thereto,

QUIETING TITLE—PERSONS ENTITLED TO MAINTAIN ACTION.

3. Section 516, B. & C. Comp., providing that any person claiming an interest in real estate may maintain a suit to determine conflicting or adverse claims, authorizes the maintenance of a suit, whether plaintiff's title be deemed legal or equitable, to determine all adverse claims.

VENDOR AND PURCHASER—NOTICE OF PRIOR DEED—EFFECT.

4. A subsequent grantee, with knowledge of the prior deed, takes subject thereto.

From Coos: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE KING.

This suit was brought under Section 516, B. & C. Comp., to quiet title to the west ½ of the southeast ¼ of section 15, and the west ½ of the east ½ of section 22, all in township 25 south, range 13 west, in Coos County.

The complaint is in the usual form. Service of summons was had by publication, and default taken as to the Belt Line Railway Company. J. H. Bennett and C. F. Humphrey answered denying plaintiff's ownership and possession, and set up an affirmative defense, the essential averments of which are:

That on or about August 26, 1902, the Great Central Land Company, a corporation, herein referred to as the "Central Company," became the owner and holder of a written contract to purchase the property described from C. H. Merchant, by the terms of which, in consideration of a cash payment of $3,750, there was placed in escrow with the Flanagan & Bennett Bank in Marshfield, Or., a deed conveying a good and sufficient title to the Central Company in and to the real property in question, with the understanding that the deed should be delivered to the company, or its assigns, upon the payment to Merchant's credit, within one year from the date of the agreement, the further sum of $8,250, with interest at

6 per cent per annum. That the Belt Line Company succeeded to all the rights in and to the real and personal property held under the Merchant contracts. That on August 26, 1903, the balance of the purchase money due under the Merchant contract being due and unpaid, Merchant brought a suit foreclosing the contract of sale, wherein the circuit court decreed that he be paid $8,200 as the balance found due on the contract, and on the receipt thereof that he execute to the Central Company a deed to the property. That on February 26, 1904, Merchant and wife, having received the balance due on the contract, executed to the Central Company a deed conveying the fee-simple title in and to the realty involved, whereupon deeds thereto were also executed by both the Central and Belt Line Companies to John K. Kollock, the plaintiff, which deeds were in form an absolute transfer of the title to the lands described, but were intended only as a mortgage to secure the payment of the balance of the purchase price paid Merchant by the Central Company, which plaintiff had loaned, or caused to be loaned, to the company, for such purpose, and that plaintiff agreed, upon receipt thereof, to reconvey the property to the Central Company and its assigns. That the deed to Kollock from the Belt Line Company was not executed in the corporate name of the company, and accordingly not the deed of such company. That on April 4, 1904, the Central and Belt Line Companies, respectively, in each of their corporate names, through their president, L. D. Kinney, in good faith, for a valuable consideration, by separate deeds, granted, bargained, sold, conveyed, and confirmed to the defendants Humphrey and Bennett all of the real estate involved. That Kinney, at the time of the execution thereof, was the owner and holder in law, or equity, or in control, of nearly all of the subscribed and issued capital stock of such companies and in position to have caused the previous authorization, as well as the subse-

quent ratification of the conveyances mentioned. That immediately upon the execution of the last-mentioned deeds the companies named abandoned their corporate franchises, charters, and privileges by failing to comply with the statute respecting the payment of the annual license fees for the years beginning July 1, 1904, and 1905, resulting in their dissolution. That by virtue of the deeds last mentioned defendants Humphrey and Bennett are the owners of all the right, title, interest, and estate of such companies in and to the property involved, including their right of redemption from the mortgages held thereon by plaintiff under his deeds. That the realty in question is in the actual possession of L. D. Kinney under a contract with one F. B. Waite, therein recited to be the owner, under and by virtue of the terms of which Kinney is offering, in open market, lots, pieces, and parcels of the land for sale. That the defendants are not advised of the exact amount of indebtedness, or of the facts as to whether any payments have been made to, and accepted by, plaintiff in discharge, in whole, or in part, of the indebtedness occasioned by the transactions mentioned, and for which the deed to Kollock was intended to secure, by reason of which the amount necessary to a redemption of the real estate therefrom is unknown to defendants; but that they have offered to pay plaintiff the amount due thereon, requesting of him a full and complete discharge of the lands and premises from such lien. That plaintiff denies the right of defendants to redeem, and has refused to render them a statement of the amount necessary for such purpose, which amount, whatever it may be, they are ready, willing, and able to pay as soon as the sum necessary therefor may be determined, and are ready, willing, and able in all things to do equity in making redemption of the premises in controversy. These averments are followed by a prayer for appropriate relief, including the right to redeem, etc.

Plaintiff replied admitting the affirmative allegations of the answer, except the averments to the effect that the deeds to him were understood, or intended to be held, as mortgages, or executed for any other purpose than of conveying to him all interest such company had in the land, or that either of the companies, through Kinney, as president, in good faith, or for a valuable consideration, conveyed the property to Humphrey and Bennett, and avers: That the plaintiff's deeds are *bona fide* absolute conveyances to him of the property in question; that the pretended deeds to Humphrey and Bennett were executed wholly without authority from the corporations, or either of them; that in signing the companies' corporate names to the instruments of writing, through which defendants assert title, Kinney acted without authority; that such instruments were wholly without consideration and were delivered to Bennett under an express understanding, and on condition, that they were not intended to be and should not have the force or effect of deeds, or conveyances of the land therein described.

From the evidence taken before it, the trial court found, in effect: That plaintiff, by deeds duly and regularly executed to him, prior to and inclusive of February 24, 1904, became the owner of the lands described in the complaint, and is in possession thereof, holding the legal title thereto as trustee, with power to sell the same to satisfy the outstanding indebtedness against the property, amounting to $54,091.70, due the Title Guarantee & Trust Company of Portland, Or.; that on April 4, 1904, the Central and Belt Line Companies, by L. D. Kinney and Ralph Green, as president and director, respectively, of each, executed to defendants Humphrey and Bennett, deeds purporting to convey to them the realty involved, which deeds appear to have been regularly executed, except that no corporate seal appears thereon; and that the pretended conveyances were delivered to Bennett

and Humphrey with an express understanding that they were to advance a sum of money to pay the indebtedness, or a portion thereof, owing the Title Guarantee & Trust Company, the instruments to be returned to Kinney if such moneys should not be paid, none of which indebtedness have defendants at any time paid, or pretended to pay, by reason of which they, and each of them, are in default, entitling plaintiff to a decree as demanded. A decree was entered accordingly, from which defendants Humphrey and Bennett appeal.

.AFFIRMED.

For appellant there was a brief over the names of *Mr. J. M. Blake, Mr. Francis H. Clarke,* and *Mr. L. A. Liljequist,* with an oral argument by *Mr. Blake.*

For respondent there was a brief over the names of *Messrs. Kollock & Zollinger, Mr. John S. Coke, Mr. A. J. Sherwood,* and *Mr. Charles A. Sehlbrede,* with oral arguments by *Mr. Coke, Mr. Sehlbrede* and *Mr. John K. Kollock, in propria persona.*

MR. JUSTICE KING delivered the opinion of the court.

From the synopsis of the issues, it will be observed that the points in controversy are narrowed to the contention on the part of appellants, controverted by respondent, that the deeds to Kollock were intended as mortgages only;, while, with reference to appellants' deeds, respondent asserts, but appellants deny, that they were executed without consideration, were not delivered, and are void. After a careful examination of the record, including the testimony adduced, we fully concur in the findings and conclusions of the trial court. It is conceded that each of the parties deraigned title through a common grantor, and undisputed that appellants' deeds were accepted with full knowledge of the previous transfers to Kollock. Since the execution of the Kollock deeds, the realty in dispute has not been in the possession of any one, except such possession as has been exercised by

respondent's agents, who platted the land, selling parts thereof for the purposes contemplated.

1. It is first maintained that the Kollock deeds are, in legal effect, mortgages only, and that the property described therein, by reason of the alleged transfers thereof to appellants, is held subject to their right of redemption, in support of which it is argued that while oral testimony is admissible for the purpose of proving the conveyances mortgages, verbal testimony under Section 797, B. & C. Comp., is inadmissible to establish any trust relationship in connection therewith. This objection, however, is overcome by a showing that Kollock received the deeds, and, acting under the oral agreement made in connection therewith, has, through his agents, platted and sold parts and parcels of the land in controversy. *Cooper* v. *Thomason*, 30 Or. 161, 175 (45 Pac. 296); *Starr* v. *Kaiser*, 41 Or. 170, 174 (68 Pac. 521).

2. The proof satisfactorily discloses that the deeds to Kollock were intended to transfer a complete title, and that it was fully understood at the time of the execution thereof that he should have full power to sell the property, execute deeds to purchasers, and apply the proceeds in cancellation of the Title Guarantee & Trust Company's claims, and account to his grantors for any sum remaining. By virtue of these transactions, respondent became, not a mortgagee, but a holder of the legal title, and liable only to account as trustee for the proceeds of sales from the property when made, and entitled to maintain a suit in his own name with reference thereto. *Ladd* v. *Johnson*, 32 Or. 195 (49 Pac. 756); *Title Guarantee & Trust Co.* v. *Northern Counties Investment Co.* (C. C.), 73 Fed. 931; *Wright* v. *Conservative Investment Co.*, 49 Or. 177 (89 Pac. 387); *King* v. *Miller*, 53 Or. 53 (97 Pac. 542).

3. Moreover, since Section 516, B. & C. Comp., provides that "any person claiming an interest or estate

in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates," it would seem that, whether respondent's title be deemed legal or equitable, there could be no question as to his right to maintain a suit to determine all adverse claims affecting such titles (*White* v. *McSorley*, 47 Wash. 18: 91 Pac. 243) ; but all doubts on the subject, if any, are completely set at rest by the decisions of this court in *Ladd* v. *Mills*, 44 Or. 224 (75 Pac. 141), and *Holmes* v. *Wolfard*, 47 Or. 93, 99 (81 Pac. 819).

4. Whatever may have been the conditions under which the deeds to appellants were given, or the manner and form of their execution, having been executed subsequent to, and with full knowledge of respondent's deeds, they were accepted subject to his rights, making a determination herein of the sufficiency of their execution unnecessary.

The decree of the court below is affirmed.

AFFIRMED.